IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
November 6, 2013 Session

## STATE OF TENNESSEE v. MARCUS POPE

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Shelby County**
**No. 1100886     John T. Fowlkes, Jr., Judge**

_____

**No. W2012-00033-SC-R11-CD - Filed December 30, 2013**

_____

The defendant, convicted of aggravated robbery and aggravated burglary, and sentenced to concurrent terms of ten and six years respectively, appealed, challenging the sufficiency of the evidence. The Court of Criminal Appeals affirmed the convictions and sentences, holding that the evidence of identification was sufficient as to both convictions and, as to the aggravated burglary, holding that the victim had not given his "effective consent" to the entry of the residence. We granted the application for permission to appeal to determine whether the evidence, circumstantial or direct, was sufficient to establish both convictions. Because the jury had the prerogative to reject the alibi testimony offered by the defendant, the identification evidence was sufficient as to both offenses. The aggravated robbery conviction is, therefore, affirmed. As to the aggravated burglary, however, the evidence is insufficient as a matter of law to support the conviction because there was no evidence that the Defendant engaged in an act of "deception," as defined by statute, in the context of "effective consent." The aggravated burglary conviction is, therefore, reversed and the charge dismissed. We remand for a new trial on the lesser included offenses of aggravated criminal trespass and criminal trespass.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Affirmed in Part and Reversed in Part; Remanded to the Trial Court**

GARY R. WADE, C.J., delivered the opinion of the Court, in which JANICE M. HOLDER, CORNELIA A. CLARK, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

Stephen Bush, Public Defender, and Phyllis Aluko (on appeal) and Dianne Thackery (at trial), Assistant Public Defenders, for the appellant, Marcus Pope.

Robert E. Cooper, Jr., Attorney General and Reporter; William E. Young, Solicitor General; Andrew C. Coulam, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Muriel Malone, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION
## I. Facts and Procedural History

Carl Brown (the "victim") sold candy, drinks, and other snacks from his one-bedroom residence in the South Memphis community. On the afternoon of August 12, 2010, he was robbed by two men of several items of merchandise and $300 to $400 in cash. A police officer arrived at the scene at 1:56 p.m., within minutes after the robbery. On the following day, the victim identified one of the robbers, Marcus Pope (the "Defendant"), from an array of photographs presented by Memphis Police Officer Timothy Foster, who led the investigation. Based on the identification, an arrest warrant was issued for the Defendant. He was ultimately indicted for aggravated robbery, aggravated burglary, and the employment of a firearm during the commission of a dangerous felony.

At trial, the victim, who had lived in the South Memphis area for over five years, testified that he supplemented his disability income by selling from his home such items as candy, popcorn, sodas, and ice cream to the people of his neighborhood. He explained that he had developed the business concept as a convenience to his community because the nearest store was a mile or a mile and a half away. The victim, who used both a "scooter" and a cane to move about the interior of his residence, testified that he typically made all sales through a window because he had been robbed on prior occasions. He described the Defendant as a regular customer who had been coming to his residence for at least a year and who was often accompanied by the mother of his children and her sister, both of whom lived in the neighborhood. According to the victim, approximately two weeks prior to the robbery, he had noticed the Defendant with a male companion. On the two days preceding the day of the robbery, the companion had arrived at the victim's residence, asked to purchase a drink, and been served through the window. When the Defendant arrived with his companion on the day of the robbery, the victim invited the two men to enter his residence because he "felt so comfortable with [the Defendant]."

After they entered the residence, the victim turned his back and, as he walked to his "scooter" in the living room, the Defendant's companion "ran towards [the money] change box." While the victim was "scuffling" with the companion and "biting him on the hand," the Defendant "came up and hit [the victim] in [his] head." The victim testified that he "might have blanked out for a second but [he] woke up begging for [his] life," telling the two men, "[Y]ou all get what you want, just don't kill me." The Defendant's companion, who was holding a gun, "stood right over [the victim]" while the Defendant "rummag[ed] through [the] house" and removed from the floor anything that the victim may have been able to use in self-defense. The victim stated that "they" found $300 or $400 in his pocket and that "they" also took knickknacks, snacks, and a jar of pennies. According to the victim, the Defendant then tied him with a telephone cord and asked, "[W]hy [are] you trying to put up a struggle, old man?" The victim also recalled that the Defendant's companion, before

-2-

leaving, "sprayed [him] with some mace." He described the robbery as lasting "about six minutes." After the two men left the residence, the victim struggled free within "half a minute," went to the doorway, and shouted for help. A passerby stopped and called 911. Although the victim claimed to know the Defendant by sight, he could not recall the Defendant's name when interviewed by the police. As a part of the police investigation process, the victim provided a description of the Defendant—"nineteen, stands about [5' 4" or 5' 5"], dark complexion"—and identified him from a photographic lineup. He again made a positive identification at trial.

On cross-examination, the victim admitted that he would occasionally allow customers to come inside his residence, especially small children. He insisted, however, that he ordinarily made all sales through the window. He acknowledged that he received a "disability check from the government," and explained that he did not make enough money to be required to pay income tax or otherwise report his earnings from sales to the Social Security Administration. Upon further questioning, the victim conceded that he had been convicted in 2001 for selling less than a half a gram of cocaine for which he had received a three-year probated sentence.

At the conclusion of the State's proof, the trial court granted the Defendant's motion for acquittal as to the charge of employing a firearm during a dangerous felony.

The Defendant's mother, Lovie Pope, was offered as an alibi witness for the defense. She claimed that the Defendant was at her three-bedroom home in Whitehaven, a fifteen- or twenty-minute drive from the victim's residence, when she received a call about the robbery at "ten or ten-thirty" in the morning. She admitted, however, that she had failed to inform the police of her claim that the Defendant was at her residence for the entire day. Marquita Pope, the Defendant's sister, knew the victim and had purchased items at his residence, but she also maintained that at the time of the robbery the Defendant was at the residence she shared with him, his children, her brother, and her parents. When asked why she did not inform the police of her claims, she explained that she "didn't know who to talk to." She further acknowledged that because she occupied a separate bedroom, she was unable to actually see the Defendant at all times on the date of the robbery. The Defendant's brother, Marquez Pope, also claimed to be an alibi witness. Pope, who knew the victim as "the candy man," testified that he had made several purchases at the victim's residence in the past. He contended that the Defendant did not leave the family residence on the day of the robbery, but he admitted that he was asleep part of the time in a separate bedroom, could not account for the Defendant's whereabouts for portions of the day, and did not contact the police to make a statement. Pope also acknowledged that someone in the family had probably left the residence to walk to a store that day, possibly for cigarettes, but he could not recall which family member did so.

-3-

The Defendant chose to testify. He admitted that he was familiar with the victim as "candy man," having gone to his residence "once a month" or so, when his children visited their grandparents, but he denied being involved in the robbery. He stated that he lived with his mother, his brother, his sister, his sister's baby, and his two young sons, and contended that he was at his residence at the time of the robbery.

Walter Burns, a patrol officer with the Memphis Police Department, testified as a rebuttal witness for the State. As the first officer on the scene, he found that the victim had suffered "a gash at the top of his head." According to Officer Burns, the first report of the robbery to the police was between 1:40 and 1:45 p.m.

After closing arguments, the trial court instructed the jury on the charges of aggravated robbery and aggravated burglary and their respective lesser included offenses, including all applicable definitions, except for the definition of "deception" as it relates to the "effective consent" of the victim, an element of the offense of aggravated burglary. Neither the State nor the Defendant lodged an objection to the instructions.

The jury found the Defendant guilty of aggravated robbery, a Class B felony, and aggravated burglary, a Class C felony, implicitly rejecting the alibi defense and the claim of misidentification. The trial court imposed concurrent, Range I sentences of ten and six years, respectively. On direct appeal, the Court of Criminal Appeals affirmed the convictions and sentences. In the application for permission to appeal, the Defendant argued that the evidence of identity was insufficient to support either the aggravated robbery or the aggravated burglary and further contended, as to the aggravated burglary, that he entered the residence with the consent of the victim, thereby precluding a conviction for that offense. This Court granted the application to consider the sufficiency of the convicting evidence for each crime and, more particularly, whether the Defendant's entry of the residence was without the "effective consent" of the victim.

## II. Standards of Review
### A. Statutory Construction

The standard of review for statutory construction is de novo. State v. Edmondson, 231 S.W.3d 925, 927 (Tenn. 2007). When the meaning of certain statutory language, such as the term "effective consent," is in question, well-established canons of construction apply. Penal statutes are to be construed giving fair import to their terms in a way that promotes justice and effectuates the objectives of the criminal code. Tenn. Code Ann. § 39-11-104 (2010). The function of the judiciary is to carry out legislative intent without broadening the statute beyond its intended scope. Houghton v. Aramark Educ. Res., Inc., 90 S.W.3d 676, 678 (Tenn. 2002). There is a presumption that every word in a statute has meaning and purpose and should be given full effect so long as the obvious intention of the General Assembly is

not violated by so doing. In re C.K.G., 173 S.W.3d 714, 722 (Tenn. 2005). A closely related principle, *expressio unius est exclusio alterius*, provides "that where the legislature includes particular language in one section of a statute but omits it in another section of the same act, it is generally presumed that the legislature acted purposefully in the subject included or excluded." State v. Loden, 920 S.W.2d 261, 265 (Tenn. Crim. App. 1995); see also State v. Hawk, 170 S.W.3d 547, 551 (Tenn. 2005). When a statute is clear, courts simply apply the plain meaning without complicating the task. Eastman Chem. Co. v. Johnson, 151 S.W.3d 503, 507 (Tenn. 2004).

## B. Sufficiency of the Evidence

Our standard of review of the evidence, both direct and circumstantial, is limited. State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011). We must afford the State "the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." State v. Vasques, 221 S.W.3d 514, 521 (Tenn. 2007) (citing State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978)). The relevant question is whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319 (1979). "Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009) (citing State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992)). Although we review de novo the application of the law to the facts, Jordan v. Knox Cnty., 213 S.W.3d 751, 763 (Tenn. 2007) (citing State v. Thacker, 164 S.W.3d 208, 247-48 (Tenn. 2005)), we cannot substitute our own inferences for those drawn by the factfinders at trial, State v. Lewter, 313 S.W.3d 745, 747-48 (Tenn. 2010).

## III. Analysis
## A. Identification and Alibi

As to each conviction, the Defendant argues that the victim's identification "is questionable when compared with the testimony of the Defendant [and three alibi witnesses] that he was not even in that part of town at the time of the robbery." He also challenges the sufficiency of the evidence as to theft, a statutory element of both aggravated robbery and aggravated burglary, and the use of a deadly weapon or the infliction of bodily injury, alternative statutory elements of aggravated robbery.[1]

A "[r]obbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a) (2010). The

---

[1] Our analysis in this section does not address the issue of whether, as to the aggravated burglary, the entry was without the effective consent of the victim.

robbery is aggravated when "[a]ccomplished with a deadly weapon" or "[w]here the victim suffers serious bodily injury." Id. § 39-13-402(a)(1), (2) (2010). Aggravated burglary is more particularly defined in the next section of this opinion, but, in essence, involves the entry of "a habitation" with the intent to commit, among other things, a theft. Id. §§ 39-14-402(a)(1), -403(a) (2010). As a statutory element of both aggravated robbery and aggravated burglary, a person commits a "theft" when, "with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Id. § 39-14-103(a) (2010 & Supp. 2013). Criminal responsibility is an alternative theory under which the State may establish guilt based upon the conduct of another. Id. § 39-11-402 (2010). Under the theory of criminal responsibility, the evidence must establish that a defendant in some way knowingly and voluntarily shared in the criminal intent of the crime and promoted or assisted its commission. Dorantes, 331 S.W.3d at 386. Presence and companionship with the perpetrator before, during, and after the commission of the crime are circumstances upon which a juror may infer the defendant's participation. Id.

Here, there was evidence that the Defendant and his companion first entered the residence of the victim and then, by the use of a gun and the infliction of injury forcibly, took several items of property and $300 or $400 in cash. During the course of the robbery, the victim was struck from behind and briefly lost consciousness. When he awoke, he begged for his life. The victim knew the Defendant by sight as a regular customer and recalled that the Defendant often came to his residence accompanied by the mother of his children and her sister, both of whom lived nearby. When interviewed by the police shortly after the robbery, the victim provided a description of the Defendant and identified him from a photographic lineup. The victim also identified the Defendant at trial. From all of this, it is our view that the jury acted within its prerogative by accrediting the testimony of the victim and by concluding from the evidence, both direct and circumstantial, that the Defendant was guilty of aggravated robbery and, assuming a lack of "effective consent" to enter the residence, that the Defendant was also guilty of aggravated burglary.

Moreover, the jury was entitled to reject the testimony of the Defendant and that of his mother, his sister, and his brother, all of whom claimed that the Defendant was at a residence they shared in Whitehaven, a fifteen- or twenty-minute drive from the residence of the victim in South Memphis. In the resolution of questions of fact, such as those presented by evidence of alibi or the identity of the perpetrator, "the jury bears the responsibility of evaluating the conflicting evidence and accrediting the testimony of the most plausible witnesses." State v. Hornsby, 858 S.W.2d 892, 897 (Tenn. 1993); see also Forbes v. State, 559 S.W.2d 318, 324 (Tenn. 1977) ("[T]he credibility of alibi witnesses and the weight to be given their testimony are within the exclusive province of the jury."). "The choice of which witnesses to believe and which to disbelieve is a matter entrusted to the jury." State v. Thomas, 158 S.W.3d 361, 388 (Tenn. 2005) (citing Bolin v. State, 405

S.W.2d 768, 771 (Tenn. 1966)); see also State v. Bonds, 189 S.W.3d 249, 256 (Tenn. Crim. App. 2005) ("It is well-settled law in Tennessee that 'the testimony of a victim, by itself, is sufficient to support a conviction.'" (quoting State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993); State v. Williams, 623 S.W.2d 118, 120 (Tenn. Crim. App. 1981))). Under these circumstances, the jury had the authority to accredit the victim's identification of the Defendant and to discredit altogether the alibi testimony of the Defendant and his family.

### B. Effective Consent

The more difficult issue is whether the victim's invitation to the Defendant to enter the residence precluded the aggravated burglary conviction. A person commits aggravated burglary when, "without the effective consent of the property owner[, the person e]nters a [habitation] with intent to commit a felony, theft or assault." Tenn. Code Ann. §§ 39-14-402(a)(1), -403(a) (emphasis added); see also id. § 39-14-401(1)(A) (2010) (defining a "habitation" as "any structure . . . designed or adapted for the overnight accommodation of persons"). "'Effective consent' means assent in fact, whether express or apparent, including assent by one legally authorized to act for another. Consent is not effective when . . . [i]nduced by deception . . . ." Id. § 39-11-106(a)(9)(A) (2010 & Supp. 2013). An aggravated burglary may, therefore, be committed by deception, which takes place when

(A) . . . a person knowingly:

(i) Creates or reinforces a false impression by words or conduct, including false impressions of fact, law, value or intention or other state of mind that the person does not believe to be true; [or]

. . . .

(iii) Fails to correct a false impression of law or fact the person knows to be false and:
(*a*) The person created; or
(*b*) Knows is likely to influence another[.]

. . . .

(B) "Deception" does not include falsity as to matters having no pecuniary significance or puffing by statements unlikely to deceive ordinary persons in the group addressed[.]

Id. § 39-11-106(a)(6)(A), (B) (emphasis added).

In this instance, the trial judge, when providing the definitions relevant to the charge of aggravated burglary, instructed the jury that "'[e]ffective consent' means assent in fact, whether express or apparent, including assent by one legally authorized to act for another. Consent is not effective when induced by deception or coercion." (Emphasis added.)[2] The trial judge did not, however, instruct the jury as to the statutory definition of "deception" or the limitation in subsection (B). As noted, neither the State nor the Defendant objected at trial to the instructions, and the omission of the statutory definition of "deception" has not been presented or argued in this appeal. Nevertheless, we must consider the ultimate question of whether the evidence presented at trial sufficiently established that the Defendant committed an aggravated burglary as defined by statute. See State v. Cecil, 409 S.W.3d 599, 609 & n.9 (Tenn. 2013) (explaining why, as a matter of due process, appellate review of the sufficiency of the evidence depends upon the jury receiving instructions as to each and every element of the crime). More specifically, we must determine whether any rational trier of fact, if given the complete and accurate statutory definition, could have found beyond a reasonable doubt that the Defendant gained entry by "deception"—either by words or conduct creating or reinforcing "false impressions of fact, law, value or intention or other state of mind," or by failing to correct "a false impression of law or fact." Tenn. Code Ann. § 39-11-106(a)(6)(A)(i), (iii).

By the unambiguous terms of our statute, deception may involve an affirmative act by a criminal actor—as when a person creates or reinforces a false impression of law, fact, value, intention, or other state of mind—but also may involve a passive act, as when a person fails to correct a false impression of law or fact. There is a key distinction, however, in the statutory language as to the types of affirmative acts that may qualify as deception and the types of passive acts that may qualify as deception. An affirmative act of deception may occur when a person uses words or conduct to create or reinforce "false impressions of fact, law, value or intention or other state of mind." Id. § 39-11-106(a)(6)(A)(i) (emphasis added). A passive act of deception, on the other hand, only occurs if a person fails to correct "a false impression of law or fact." Id. § 39-11-106(a)(6)(A)(iii) (emphasis added). Noticeably absent is a failure to correct a false impression of intention or other state of mind. Based

---

[2] "Coercion," which is not at issue in this case,

> means a threat, however communicated, to: [c]ommit any offense; [w]rongfully accuse any person of any offense; [e]xpose any person to hatred, contempt or ridicule; [h]arm the credit or business repute of any person; or [t]ake or withhold action as a public servant or cause a public servant to take or withhold action[.]

Id. § 39-11-106(a)(3)(A)–(E).

upon our principles of statutory construction, we must presume that the General Assembly's exclusion of "value or intention or other state of mind" in subsection (iii), which is included in subsection (i), was purposeful. See Hawk, 170 S.W.3d at 551; Loden, 920 S.W.2d at 265.

Tennessee is one of few states that has a statutory definition of "deception," in the context of a burglary offense, which includes a passive act—a failure to correct a false impression that induces the property owner's consent at the time of entry. Cf. Alaska Stat. Ann. §§ 11.46.180(a), 11.81.900(b)(18)(B) (West 2013) (defining "theft by deception" to include the failure to correct a false impression that the defendant has previously created or confirmed). Other state courts have interpreted the term "deception," or its equivalent, to require an affirmative act—words or conduct inducing the property owner's consent at the time of entry. See Commonwealth v. Starkes, 407 A.2d 853, 856 (Pa. Super. Ct. 1979) (reversing a burglary conviction because the victim allowed the defendant to enter her residence upon the belief that he was an acquaintance of her boyfriend and because it was cold outside, and there was no evidence that the defendant misrepresented his identity, misstated his purpose, or otherwise deceived the victim); see also State v. McGinnis, 317 S.W.3d 685, 688 (Mo. Ct. App. 2010) (finding deception where the defendant lied to the victim about her husband's whereabouts in order to gain access to the residence); State v. Thomas, 70 S.W.3d 496, 509 (Mo. Ct. App. 2002) (finding deception where the defendant "gained access through artifice, i.e., by telling [the] victim that he needed to use her phone when that clearly was not his intention"). Texas, which has a statute similar to our own and renders consent ineffective when "induced by force, threat, or fraud," Tex. Penal Code Ann. § 1.07(a)(19) (West 2013), requires a fraudulent act on the part of the defendant. See Eppinger v. State, 800 S.W.2d 652, 654 (Tex. App. 1990) (holding that the defendant did not engage in fraudulent or deceptive behavior when the victim allowed him to enter upon the mistaken belief that the defendant was a friend).

The Court of Criminal Appeals, affirming the aggravated burglary conviction in this case, relied in great measure on its ruling in State v. Holland, 860 S.W.2d 53 (Tenn. Crim. App. 1993), a case involving affirmative acts of deception. In that case, Holland went to a residence where several workers had been hired to paint. By informing the painters that he had been employed to work in the yard and giving the impression to the owner of the residence that he worked with the painters, Holland gained entry to the residence on several occasions throughout the day. Id. at 55-56. Because the evidence established that Holland had actively created a false impression and otherwise he would not have been allowed inside the residence to "accomplish[] the felonious deed which prompted his entry," the aggravated burglary conviction was upheld on appeal. Id. at 58-59.

Holland, while instructive, is distinguishable from the case before us on the facts. Holland misrepresented to the painters that he had been hired to perform yard work and, by

his actions during the course of the day, was able to convince the owner that he was a legitimate part of a crew employed to paint the residence. At the end of the work day, he was permitted to re-enter the residence because he told the owner that he needed to retrieve a set of keys. Id. at 56. Later, when he returned to the residence and asked permission to again go inside, this time "to watch television," the owner of the residence asked him to leave. Id. All of these actions qualify as "affirmative acts" by which Holland created and then reinforced a false impression of fact (that he was a member of the painting crew) and false impressions of intention (that he wanted to enter the residence in order to retrieve the keys and to watch television). Id. at 58.

Here, the Court of Criminal Appeals held that the jury could have reasonably inferred that the Defendant "failed to correct the victim's false impression that he was entering the victim's residence to conduct business as he had several times previously[ and, h]ad it not been for this false impression, the victim would not have allowed him entry." State v. Pope, No. W2012-00033-CCA-R3-CD, 2012 WL 5385206, at *5 (Tenn. Crim. App. Nov. 5, 2012). This conclusion—that the Defendant failed to correct the victim's false impression of his intentions for entering the residence—overlooks two key points. First, the intermediate court did not address the statutory distinction between affirmative and passive acts of deception. As noted, by the language of our statute, failing to correct a false impression of intention, a passive act, does not qualify as deception. Moreover, the State has been unable to produce evidence of an affirmative act by the Defendant—a misstatement of his actual intentions. Second, the intermediate court overlooked the fact that there was no testimony over the course of the trial that either the Defendant or his companion had been inside the residence on any prior occasion. Although the victim testified that, on the day of the robbery, he had extended the invitation to enter his residence because the Defendant had gained his trust, there was no evidence that the Defendant or his companion had asked to come inside in order to purchase a drink or for any other reason.

The Superior Court of Pennsylvania has reversed a burglary conviction on facts nearly identical to those before us. In Commonwealth v. Starkes, the victim was in her residence when she heard a knock on her front door. 407 A.2d at 854. A man whom the victim recognized as an acquaintance of her boyfriend, Butch, asked if Butch was at home. The victim opened the door and allowed the man to enter her residence because she recognized him and because it was cold outside. Id. After she closed the door, the victim heard other people on her front porch. Upon learning that they were acquaintances of the man inside the residence, the victim opened the door again and allowed the other men to enter. Id. Once inside, the men aimed a gun at the victim and stole several items from the residence. A jury found them guilty of burglary, id., but the Superior Court of Pennsylvania reversed the conviction on appeal, id. at 856.

The statute at issue in Starkes varied slightly from our state's definition of burglary. In Pennsylvania, "[a] person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter." Id. at 855 (emphasis added); see 18 Pa. Cons. Stat. Ann. § 3502(b) (West 2013). Acknowledging the lack of a statutory definition of "the terms License and Privilege," the court in Starkes considered how the burglary statute had been applied to the factual circumstances of prior cases and concluded that "the element of license and privilege, in the particular context of the instant case, is quite similar to [the] defense of consent. [L]ike consent, license and privilege can be vitiated if they are 'induced by force, duress or deception.'" 407 A.2d at 855-56; see 18 Pa. Cons. Stat. Ann. § 311(c)(4) (West 2013). Applying this interpretation of the statute to the facts in that case, the court held that

> [r]egarded in the light most favorable to the Commonwealth, the evidence shows that [the victim] "let in" the first man because she recognized him as her boyfriend's acquaintance and because it was cold outside. When the first man acknowledged that [the defendant] and another man were with him, [the victim] opened her door and let them in too. There is no evidence to suggest that any of the three robbers asked to enter in order to visit or to wait for Butch, misrepresented their identity, stated, much less misstated their purpose, or otherwise deceived [the victim] into allowing them to enter. The only conclusion supportable by the evidence is that [the victim] permitted the men to enter because she recognized one man and wished to be hospitable to him and those with him. No evidence suggested that any of the robbers inveigled or deceived [the victim]. We hold, therefore, that the evidence was insufficient to prove [the defendant's] unlicensed or unprivileged entry.

Starkes, 407 A.2d at 856 (emphasis added) (footnote omitted).

While our General Assembly, unlike other state legislatures, has included passive acts as a manner of deception, Tennessee Code Annotated section 39-11-106(a)(6)(A)(iii) is limited to a "[f]ail[ure] to correct a false impression of law or fact." If there was any evidence that the Defendant created a false impression of his intention, such as by knocking on the victim's door and asking to be allowed inside in order to purchase a drink or escape the heat, then a conviction for aggravated burglary might be permissible. See, e.g., Eppinger, 800 S.W.2d at 654 (acknowledging that deception could have been found "if, for example, [the defendant] had knocked on [the victim's] door and, through the screen, asked for a cigarette"). The facts of this case, however, do not support that conclusion. Likewise, if there was any evidence that the Defendant reinforced a false impression of intention or failed to correct a false impression of fact that influenced the victim to open his door, the

conviction could stand. But because the Defendant knew that the victim typically served products through his window and did not allow customers to enter his residence, and because neither the Defendant nor his companion had entered the residence at any time prior to or on the day of the robbery, the evidence cannot sustain a conviction for aggravated burglary. In our view, no rational trier of fact could have concluded that the Defendant deceived the victim either by reinforcing a false impression of intent to enter the residence in order to purchase a drink, or by failing to correct a false impression that he was a legitimate customer.

Under these circumstances, the only conclusion supportable by the evidence is that the victim permitted the Defendant to enter the residence because he recognized and trusted him and offered to extend exceptional hospitality to him. Further, even if the victim could have formed a false impression that the Defendant intended to enter his residence for the purpose of purchasing a drink, our statute does not allow for a conviction based upon the Defendant's failure to correct the victim's false impression of his intention. To hold otherwise would mean that in order to obtain "effective consent" from a property owner, a defendant would have to announce his or her criminal intent prior to obtaining the owner's permission to enter a habitation. Such a construction would "ignore[] the statutory definition of 'effective consent'. . . [and] every felony committed within a building or habitation would also constitute burglary. Our legislature did not intend such a result." State v. Flamini, No. E2008-00418-CCA-R3-CD, 2009 WL 1456316, at *6 (Tenn. Crim. App. May 26, 2009).

We have concluded that the evidence presented at trial is insufficient to establish the offense of aggravated burglary because the Defendant entered the residence with the effective consent of the victim. For the same reason, a conviction for burglary cannot stand. Under similar circumstances, we have modified a conviction to a lesser included offense that was charged to the jury. See, e.g., State v. Swift, 308 S.W.3d 827, 831-32 (Tenn. 2010) (modifying a conviction for aggravated robbery to "the first offense listed in the jury instructions that [wa]s supported by the evidence," the lesser included offense of aggravated assault). Here, in addition to aggravated burglary and burglary, the jury was also instructed as to aggravated criminal trespass and criminal trespass. However, the pattern jury instructions provided at trial did not accurately track the statutory language.[3] Under these

---

[3] Aggravated criminal trespass of a habitation, a Class A misdemeanor, is committed by a person

who <u>enters or remains</u> on property when:

> (1) The person knows <u>the person does not have the property owner's effective consent to do so</u>; and
> (2) The person intends, knows, or is reckless about whether such person's presence will cause fear for the safety of another.

(continued...)

circumstances, we believe that the better course is to remand for a new trial on the lesser included offenses with proper instructions.

## IV. Conclusion

Because the jury was entitled to reject the alibi testimony presented by the Defendant and accredit the identification testimony by the victim, the evidence sufficiently established the Defendant's guilt of aggravated robbery. By the statutory definition of "deception," no reasonable factfinder could conclude that the Defendant's entry of the residence was without the victim's "effective consent," and, therefore, the evidence is insufficient to establish the Defendant's guilt of aggravated burglary or burglary. The judgment of the Court of Criminal Appeals is affirmed in part and reversed in part, and the cause is remanded to the trial court for a new trial on the lesser included offenses of aggravated criminal trespass and criminal trespass. Costs of this appeal are taxed to the State of Tennessee.

_____
GARY R. WADE, CHIEF JUSTICE

---

[3](...continued)
Tenn. Code Ann. § 39-14-406(a)(1)–(2), (c) (2010) (emphasis added). Criminal trespass, a Class C misdemeanor, is committed when a "person enters or remains on property, or any portion of property, without the consent of the owner." Id. § 39-14-405(a), (f) (2010) (emphasis added). These lesser included offenses, unlike the offense of burglary, permit a conviction when a person "remains on property." Cf. id. § 39-14-402(a)(1)–(2) (requiring, for a burglary or aggravated burglary conviction, that the person "[e]nters" or "[r]emains concealed" (emphasis added)).

The pattern instructions provided by the trial judge erroneously included an additional element, requiring the jury to find that the Defendant "entered or remained on property" and "knew at the time of such entry that he did not have the [victim's] effective consent to do so." See 7 Tenn. Prac. Pattern Jury Instr. T.P.I.-Crim. 14.06. While the effective consent of a property owner should be evaluated at the time of entry when the question is whether a defendant "entered" the property, the question of whether a property owner consented to a defendant's remaining on the property does not require proof that the entry was without the effective consent of the owner.

-13-