IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 3, 2014

**STATE OF TENNESSEE v. ROTHES TAYLOR**

**Appeal from the Circuit Court for Madison County**
**No. 13115      Donald H. Allen, Judge**

**No. W2013-02520-CCA-R3-CD  -  Filed December 10, 2014**

The Appellant was convicted of burglary and theft over $500 and sentenced to four years. On appeal, the Appellant argues that there was insufficient evidence to support the convictions. After reviewing the record and the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which ALAN E. GLENN, and ROBERT W. WEDEMEYER, JJ., joined.

Gregory D. Gookin, Jackson, Tennessee, for the appellant, Rothes Taylor

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Jerry Woodall, District Attorney General; and Shaun Brown, Assistant District Attorney General, for the appellee, State of Tennessee

**OPINION**

**I. Facts**

On October 23, 2012, Larry Mitchell was working on a rental house he owned. Mr. Mitchell and a co-worker returned to Mr. Mitchell's residence to get some supplies. On the way to his residence, Mr. Mitchell saw the Appellant, Rothes Taylor, and another man walking in his neighborhood. Mr. Mitchell recognized the Appellant because he had known him for several years; the Appellant and Mr. Mitchell's son used to play basketball at the Mitchell home, and the Appellant previously rented a house from Mr. Mitchell. After taking the co-worker back to the rental house, Mr. Mitchell returned home for lunch. In his direct examination, Mr. Mitchell testified:

When I came home, I discovered my shed opened, and a guy was inside my shed there. So I hollered and Mr. Taylor you know, come out. He had already set my compressor and my pressure washer on the ground, and he -- he ran -- ran away.

. . .

I ran to confront him to see if it was him[,] and he ran off.

. . .

I got into my van because I was trying to catch him and see who it was. So I -- in the meantime, I was dialing 911 and when I got back on Ridgemont, he was coming from behind someone's house running, and I had gotten in front of him, and called 911 and told them what was going on, and that was blasted. There was an officer somewhere close by, and they came back and confronted him.

. . .

[The Appellant] had a t-shirt on that he had pulled off when I had met him because I know when I had came around and met him over there on Ridgemont area, he had pulled his t-shirt off.

Mr. Mitchell testified the Appellant was alone when he came out of the shed and ran away. Mr. Mitchell next saw the Appellant while he was calling 911, and there was man with the Appellant at that time. Mr. Mitchell estimated the police arrived "a couple of minutes or better" after the Appellant exited his shed. Mr. Mitchell further testified the compressor was "probably worth $500 plus" and the pressure washer was "worth about [$]250 plus."

During cross-examination, Mr. Mitchell stated the man he saw walking around the neighborhood with the Appellant when Mr. Mitchell returned home to get some supplies earlier that day was not the same man that was with the Appellant when the police arrived. Mr. Mitchell agreed that the Appellant and the other man did not run from the police. Mr. Mitchell estimated the pressure washer weighed 50 to 75 pounds and the compressor weighed around 50 pounds or less. He said he did not see any vehicles near his house when he discovered the shed door opened, and the two items were on the ground outside the shed.

Jackson Police Department Investigator Eddie McClain was just around the corner from Mr. Mitchell's residence when a call "went out that a burglary had just been in progress and the victim was following the suspect. . . ." The call described the suspects as a black male and a white male. Investigator McClain immediately went to the area and spotted the Appellant and another man who matched the description given in the call. He stated the

Appellant was pulling on his shirt when he first saw him. Investigator McClain stopped to talk to the two men, and almost immediately, Mr. Mitchell pulled up in his vehicle. The Appellant was taken into custody after Mr. Mitchell identified him as the person he had seen in his shed. The Appellant was transported to the station by another officer while Investigator McClain went to Mr. Mitchell's house to investigate and photograph the scene. When Officer McClain arrived at Mr. Mitchell's residence, the compressor and pressure washer were inside the shed.

Susan Raut, the Appellant's girlfriend, testified that she had known the Appellant for nine years and they have two children. She testified that both she and the Appellant initially signed a lease with Mr. Mitchell, but that later Mr. Mitchell had her sign the lease alone because the Appellant had moved out of the rental house. She described a telephone call between the Appellant and Mr. Mitchell in which the Appellant explained that he was upset that his name was taken off the lease. She said the Appellant asked Mr. Mitchell to either put his name on the lease or refund his deposit, or he was going to get a lawyer. She said that, while they lived in the rental house, she and the Appellant had also had a problem with Mr. Mitchell about their dog. She stated she had not seen Mr. Mitchell since they moved out of the rental house in the summer of 2012.

The Appellant testified that he had pleaded guilty to facilitation of aggravated burglary and facilitating theft over $1,000 in 2005.[1] He testified that, on the morning of October 23, 2013, he was at Joshua Burrows' home on Royal Street. He stated an older man came by Mr. Burrows' home to ask for help getting his mower started. Mr. Burrows said he would be back in 15 to 20 minutes and left with the man. After waiting on Mr. Burrows' front porch for about 30 minutes, the Appellant left to go to Ridgemont Street to find Mr. Burrows. When the Appellant arrived at the house, Mr. Burrows was helping the man mow. The Appellant asked to use Mr. Burrows' cell phone to call his girlfriend to come pick him up, but Burrows' phone was dead. The Appellant said he walked to a friend's house to see if he could use a phone. However, no one was home, so the Appellant returned to the house where Mr. Burrows was mowing. The Appellant and Mr. Burrows were walking back to Burrows' home when they were stopped by police. At the time police arrived, the Appellant was wearing a gray tank top. The Appellant denied being on Mr. Mitchell's property or taking the compressor or pressure washer out of the shed.

---

[1] The State had filed "Notice of Request for Enhanced Punishment" informing the Appellant of its intent to use the convictions for impeachment purposes should the Appellant elect to testify.

## II. Analysis

The only issue raised on appeal is whether the evidence was sufficient to support the Appellant's conviction for burglary and theft. Specifically, the Appellant argues that he was mistakenly identified as the perpetrator and that Mr. Mitchell had a motive to falsely accuse him.

The applicable standard of review for a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); see also Tenn. R. App. P. 13(e).

A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and the Appellant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Our standard of review "is the same whether the conviction is based upon direct or circumstantial evidence." State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted).

In a jury trial, the weight and credibility given to the testimony of witnesses, as well as the reconciliation of conflicts in that testimony, are questions of fact best determined by the jury, since they saw and heard the witnesses, and by the trial judge, who concurred in and approved the verdict. Bland, 958 S.W.2d at 659 (Tenn. 1997). This Court will not reweigh the evidence. Id. On review, the "State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." State v. Vasques, 221 S.W.3d 514, 521 (Tenn. 2007).

*Identification of Appellant as the Perpetrator*

Because the Appellant claims there was insufficient evidence to convict him of both burglary and theft, we will discuss the sufficiency of the evidence for each conviction in turn. However, we will address the issue of identification of the Appellant first because the identification relates to both convictions.

It is unclear from Mr. Mitchell's testimony at what point he recognized the Appellant as the person in his shed. Mr. Mitchell testified that when he discovered the shed open and saw someone inside, "he hollered and Mr. Taylor [] come out" and ran. A short time later, Mr. Mitchell stated that when he first saw the Appellant, "I ran to confront him to see if it was him and he ran off." Next, when asked what he did after the Appellant ran, Mr. Mitchell stated, "I got in my van because I was trying to catch him and see who it was." Then, Mr. Mitchell was asked if he recognized the Appellant when he took off running, and he

-4-

answered "Yes, sir."  It is not clear from this testimony whether Mr. Mitchell recognized the person in his shed as the Appellant at the moment he saw him or after he had chased the intruder.

However, the evidence shows that Mr. Mitchell knew the Appellant.  The Appellant was confronted by the police and by Mr. Mitchell in close proximity to the storage shed almost immediately after someone ran from the shed. The jury had the opportunity to hear the Appellant's explanation of why he was near the victim's home and why he believed Mr. Mitchell had a motive to wrongfully accuse him.  Based on the verdict, the jury accredited Mr. Mitchell's testimony and reconciled the conflicts in his testimony. The jury and the trial court were in the best position to hear and observe the witnesses, and to determine their credibility and to weigh their testimony.  Intent and identity of a perpetrator are questions for the jury.  State v. Pope, 427 S.W.3d 363, 369 (Tenn. 2013).  This Court will not reweigh the evidence and "afford[s] the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom."

We conclude there was sufficient evidence to identify the Appellant as the person Mr. Mitchell saw exiting his shed.

*Theft*

"A person commits theft of property if, with the intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103(a) (Supp. 2013). "Theft of property [] is . . . a Class E felony if the value of the property [] is more than five hundred dollars ($500) but less than one thousand dollars ($1,000)[.]" Tenn. Code Ann. § 39-14-105(a)(2) (Supp. 2013).

The evidence, when considered in the light most favorable to the State, shows that the Appellant knowingly obtained or exercised control over Mr. Mitchell's compressor and pressure washer with the intend to deprive Mr. Mitchell of his property; the Appellant did not have Mr. Mitchell's effective consent; and that the value of the property was more than $500.[2]  We conclude that the evidence was sufficient to support the Appellant's conviction for E Felony theft beyond a reasonable doubt.

*Burglary*

Under Tennessee law, "[a] person commits burglary who, without the effective consent of the property owner (1) [e]nters a building other than a habitation (or any portion

---

[2] "Aggregation of separate thefts is generally permissible where separate larcenous acts are: (1) from the same owner[s]; (2) from the same location; *and* (3) pursuant to a continuing criminal impulse or a single sustained larcenous scheme." State v. Byrd, 968 S.W.2d 290, 291 (Tenn. 1998).

thereof) not open to the public, with intent to commit a felony, theft or assault; (2) [r]emains concealed, with the intent to commit a felony, theft or assault, in a building;[or] (3) [e]nters a building and commits or attempts to commit a felony, theft or assault . . . ." Tenn. Code Ann. § 39-14-402(a) (2010). "Clearly, under this statutory definition, the crime of burglary is complete when entry has been made into [a building] without the owner's consent and with an intent to commit a felony, theft, or assault." State v. Ralph, 6 S.W.3d 251, 255 (Tenn. 1999). Consummation of "the intended felony, theft, or assault is not necessary to complete the crime of burglary." Id.

The evidence, when considered in the light most favorable to the State, shows that the Appellant entered Mr. Mitchell's storage shed without Mr. Mitchell's consent with the intent to commit a theft. We conclude that the evidence was sufficient to support the Appellant's conviction for burglary beyond a reasonable doubt.

### III. Conclusion

For the aforementioned reasons, we affirm the judgments of the circuit court.

_____
ROBERT L. HOLLOWAY, JR., JUDGE
