IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs September 7, 2017

**STATE OF TENNESSEE v. SANDRA KAY STUTTS**

**Appeal from the Circuit Court for Dyer County**
**No. 14-CR-178      R. Lee Moore, Jr., Judge**

————————————————

**No. W2016-01681-CCA-R3-CD**

————————————————

The Defendant, Sandra Kay Stutts, was convicted by a Dyer County jury of one count of burglary of an automobile and one count of misdemeanor theft of property valued at $500 or less. The trial court sentenced the Defendant to one year in confinement for burglary of an automobile and to eleven months and twenty-nine days for misdemeanor theft and ordered the sentences to run concurrently. The trial court ordered the Defendant to serve sixty days of her sentence in confinement and the remainder on supervised probation. On appeal, the Defendant argues that the evidence was insufficient to convict her of burglary and of theft and that the trial court erred in sentencing her to continuous confinement for the non-violent property offense of burglary of an automobile. After a thorough review, we affirm the judgments of the trial court with respect to sufficiency of the evidence for both convictions but reverse the judgment for burglary of an automobile as to sentencing and remand for imposition of an appropriate sentence.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgments of the Circuit Court Affirmed in Part, Reversed in Part, and Remanded**

THOMAS T. WOODALL, P.J., delivered the opinion of the court, in which NORMA MCGEE OGLE and J. ROSS DYER, JJ., joined.

Sean P. Day, Dyersburg, Tennessee, for the appellant, Sandra Kay Stutts.

Herbert H. Slatery III, Attorney General and Reporter; Robert W. Wilson, Assistant Attorney General; Phil Bivens, District Attorney General; and Karen Burns, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## I. Facts and Procedural Background

On June 9, 2014, the Dyer County Grand Jury indicted the Defendant on theft of property valued at $500 or less and burglary of an automobile. The victim, Jackie Pierce, accused the Defendant of stealing $377 and fifty-eight Xanax pills from her truck.

### *Jury Trial*

Judy Carroll testified that she was acquainted with Ms. Pierce through her daughter, who was Ms. Pierce's neighbor. Ms. Carroll explained that Ms. Pierce would occasionally leave items in her yard that she intended to throw away, but Ms. Pierce permitted Ms. Carroll to look through these items beforehand and take anything she liked. On May 3, 2014, Ms. Carroll took her twelve-year-old grandson with her to look through the items in Ms. Pierce's yard. While she was there, the Defendant approached and told Ms. Carroll to leave, but Ms. Carroll refused and insisted on staying until she spoke with Ms. Pierce. Soon after, Ms. Carroll observed the Defendant approach Ms. Pierce's truck, open the door, look in "like she was looking in for something," shut the door, and then sit down in front of the truck. Ms. Carroll did not notice whether the Defendant had anything in her hands. Ms. Pierce then approached the truck. Later that evening, the Defendant and her boyfriend confronted Ms. Carroll at a dollar store regarding the incident.

Chad Kindle, Ms. Pierce's nephew, stated that he frequently visited Ms. Pierce and that he was on her property on May 3, 2014, during the incident. Mr. Kindle was changing his clothes in the shed behind Ms. Pierce's house. As Mr. Kindle left the shed, he observed the Defendant in an alleyway behind Ms. Pierce's house, about fifteen feet from Ms. Pierce's truck. Mr. Kindle saw the Defendant kneel down and "mess with" her sock, perhaps placing something inside of it. However, Mr. Kindle could not tell whether the Defendant had anything in her hands. On cross-examination, Mr. Kindle admitted that he had used methamphetamine two years prior.

Jackie Pierce testified that, at the time of the incident, her brother, Johnnie Wilson, was dating the Defendant. Previously, Ms. Pierce had allowed Mr. Wilson and the Defendant to live together rent-free in a one-bedroom house next to her main house; however, this arrangement ended about a year and a half prior to the incident. Ms. Pierce explained that she took prescription pills for rheumatoid arthritis and that the Defendant was aware of this. On May 3, 2014, Ms. Pierce had been planning on paying her bills with cash and had counted out the money and placed it in her purse. She had driven her truck to a nearby house, which was being restored by her brother-in-law, to pick up some

sinks and light fixtures. Ms. Pierce brought the fixtures to her house and began to unload them. At this time, Mr. Wilson was repairing his truck on Ms. Pierce's property and the Defendant was sitting on the steps of the back porch of the house. Although a fence partially obscured Ms. Pierce's view of the backyard, she was able to see the Defendant through a gap in the fence. Mr. Kindle was also present at the time, changing his clothes in the shed, and Ms. Carroll was rummaging through the items in the front yard.

Ms. Pierce had left her purse, wallet, and bag of medications unattended in her truck while she unloaded the sinks and light fixtures into her house. During this time, through the gap in the fence, Ms. Pierce observed the Defendant stand up and walk through the backyard towards the direction of her truck. Ms. Pierce came around the fence and saw the Defendant shutting the door to the truck. Ms. Pierce noted that her truck door was loose and that one had to lift the truck door up to shut it. When the Defendant saw Ms. Pierce, she sat down quickly on some railroad ties next to the driveway. Ms. Pierce noticed that her purse and wallet, which she had left in the truck, had been moved and that a towel she used to cover her bag of medications had also been moved. Ms. Pierce discovered that $377 and fifty-eight Xanax pills were missing. Ms. Pierce approached the Defendant to ask about the missing items, but the Defendant denied taking anything or even being near the truck.

The only other person in the vicinity of the truck at the time was Ms. Carroll, who was rummaging for items near the mailbox, about ten feet away from the truck. Mr. Wilson was in the backyard about forty feet from Ms. Pierce's truck, working on his car. Ms. Pierce testified that she doubted that Mr. Wilson could have come from the backyard and opened the truck door in the interval that she was away because his health issues impaired his speed and ability to open the truck's loose door.

Dan Wilson, a criminal investigator with the Dyersburg Police Department, testified regarding the investigation of the alleged crimes. Investigator Wilson stated that on May 5, 2014, Jackie Pierce reported that on May 3, 2014, cash and pills were stolen from her truck while it was parked in her driveway. On either May 7 or May 8, Investigator Wilson interviewed Ms. Pierce and Ms. Carroll. From these interviews, Investigator Wilson developed the Defendant as a suspect. Investigator Wilson attempted to contact the Defendant but was unable to locate her.

Based on this proof, the jury found the Defendant guilty as charged.

*Sentencing Hearing*

At the sentencing hearing, Bridget Brown testified that she was employed by the Dyer County Circuit Court Clerk's Office. She explained that her job duties included

accepting restitution payments from defendants. She noted that the Defendant had attempted to make a restitution payment but was unable because she had not yet been sentenced.

The trial court found that the Defendant had a history of "criminal behavior and convictions or behavior in addition to those necessary to establish the appropriate range of punishment[]" and "a history of unwillingness to comply with conditions of sentence or release into the community." The trial court noted that the Defendant was on probation when she committed the current offenses and that the Defendant had previously been placed on probation and had violated the conditions of her probation. The trial court concluded that "the seriousness of this offense . . . [wa]s such that some period of incarceration [wa]s appropriate[]" because the Defendant had "a fairly lengthy history of criminal conduct[,]" "at least some confinement [wa]s necessary to avoid and appreciate the seriousness of the offense[,]" and because "[l]ess restrictive measures than confinement ha[d] proven unsuccessful." The trial court sentenced the Defendant to one year in confinement for burglary of an automobile and to eleven months and twenty-nine days for theft of property valued at less than $500. The trial court ordered the sentences to be served concurrently. The trial court suspended the burglary sentence and the misdemeanor theft sentences to supervised probation after sixty days of confinement and ordered the Defendant to pay $300 in restitution.

The Defendant filed a timely motion for a new trial, and the trial court denied the motion. The Defendant timely appeals the trial court's judgments.

## II. Analysis

### *Sufficiency of the Evidence*

The Defendant contends that the evidence was insufficient to sustain both convictions because no reasonable juror could find her guilty beyond a reasonable doubt.

The standard for appellate review of a claim challenging the sufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). To obtain relief on a claim of insufficient evidence, appellant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

On appellate review, "'we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom.'" *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). This court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant, who must demonstrate to this court that the evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

A person commits burglary of a motor vehicle when they, "without the effective consent of the property owner[] . . . [e]nter[] any freight or passenger car, automobile, truck, trailer, boat, airplane or other motor vehicle with intent to commit a felony, theft or assault or commit[] or attempt[] to commit a felony, theft or assault." Tenn. Code Ann. § 39-14-402(a)(4) (2014). A person commits theft of property "if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103(a) (2014). At the time of the commission of the instant offenses, theft of property was considered a Class A misdemeanor if the value of the property was under $500. Tenn. Code Ann. § 39-14-105(a)(1) (2014).

The Defendant gives two arguments in support of the contention that the evidence is insufficient for a reasonable juror to convict her on either count: (1) the three witnesses called by the State gave three completely different stories, and (2) the "common threads" in the witnesses' testimony failed to support the conclusion that the Defendant committed the crime. However, neither of these arguments succeeds in overcoming the Defendant's burden of proof on appeal.

In support of her first argument, the Defendant described apparent inconsistencies in the witnesses' testimony. The Defendant noted that Ms. Carroll and Ms. Pierce agreed that the Defendant went to Ms. Pierce's truck and then immediately sat down near the

truck; in contrast, Mr. Kindle stated that the Defendant bent down about fifteen feet away from the truck. Also, the Defendant noted that Ms. Carroll testified that the Defendant shut the truck door quickly, while Ms. Pierce had stated that the truck door was broken and thus was, presumably, impossible to shut quickly. However, as fact-finder, it is within the discretion of the jury to reconcile apparent discrepancies in favor of the State, and it is not the task of this court to reweigh the evidence in favor of the Defendant. *See Bland,* 958 S.W.2d at 659.

Furthermore, it is not clear from the witnesses' testimonies that these purportedly contradictory statements are in fact in conflict with each other, as the accounts can easily be harmonized with each other. For example, it is possible that, consistent with the testimony of Ms. Pierce and Ms. Carroll, the Defendant immediately sat down near the truck after shutting the truck door and then later, after she had walked about fifteen feet, bent over to "mess with" her sock, consistent with Mr. Kindle's testimony. Also, regarding whether the Defendant shut the door quickly, it is important to note that the term "quickly" is not categorical. When Ms. Carroll testified that the Defendant shut the door quickly, she might have meant that she shut the door relatively quickly, given the drag on the door. It is also important to note that Ms. Pierce described the door as "loose," meaning that one has to lift it up to shut it, but she did not specifically say that, once it is lifted, it cannot be shut quickly.

Regardless of whether these attempts at harmonization represent the correct interpretation of the events, the mere fact that there are reasonable ways of reconciling the testimonies proves that they are not necessarily in conflict. Therefore, because this court must interpret evidence so as to afford the strongest legitimate interpretation to the State, it is within the province of this court to regard these witness accounts as parts of a coherent and logically-cohesive narrative.

The Defendant's second argument, that the "common threads" in the witnesses' testimonies do not provide a sufficient basis for a rational juror to find the Defendant guilty beyond a reasonable doubt, also fails. The Defendant offers two "common threads" in the witnesses' testimonies to cast doubt on the conclusion that the Defendant was guilty: (1) Mr. Wilson, a known drug abuser, was at the victim's residence during the incident, and (2) no one actually saw the Defendant handling the stolen items. However, because the jury found the Defendant guilty at trial, they clearly credited the testimony of Ms. Pierce, who stated that Mr. Wilson's health issues would have prevented him from getting to the truck fast enough to steal the items. Furthermore, a defendant can be convicted on circumstantial evidence alone, so the fact that no one witnessed the Defendant in possession of the stolen items does not indicate that the jury could not have found the Defendant guilty beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319*; see also Dorantes*, 331 S.W.3d at 379. The fact that Mr. Wilson abused drugs and that no

one saw the Defendant with the stolen items, at best, merely shows that another explanation of the events is not impossible. Such a showing does not overcome the Defendant's burden of proving that the evidence was insufficient for a jury to convict the Defendant beyond a reasonable doubt. The Defendant is not entitled to relief on this ground.

*Sentencing*

When the record establishes that the trial court imposed a sentence within the appropriate range that reflects a "proper application of the purposes and principles of our Sentencing Act," this court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). A trial court abuses its discretion when it applies an incorrect legal standard, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *State v. Clark*, 452 S.W.3d 268, 287 (Tenn. 2014) (citing State v. Banks, 271 S.W.3d 90, 116 (Tenn. 2008)). Moreover, this court may not disturb the sentence even if it had preferred a different result. *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008).

To facilitate meaningful appellate review, the trial court must state on the record the factors it considered and the reasons for imposing the sentence chosen. Tenn. Code Ann. § 40-35-210(e) (2014); *Bise*, 380 S.W.3d at 706. However, "[m]ere inadequacy in the articulation of the reasons for imposing a particular sentence . . . should not negate the presumption [of reasonableness]." *Id.* at 705-06. The party appealing the sentence has the burden of demonstrating its impropriety. Tenn. Code Ann. § 40-35-401 (2014), Sent'g Comm'n Cmts.; *see also State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* Tenn. Code Ann. § 40-35-210(b) (2014); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court should also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. Tenn. Code Ann. § 40-35-103(5) (2014).

Tennessee Code Annotated section 40-35-122 provides:

(a) Notwithstanding any law to the contrary, except as provided in subsection (b), the judge sentencing a defendant who commits a non-violent property offense, as defined in subsection (c), on or after July 1, 2010, *shall not be authorized to impose the sentencing alternatives of continuous confinement in a local jail or the department of correction as authorized by § 40-35-104(c)(5), (c)(6), or (c)(8)*. However, the judge may sentence the defendant to any of the other sentencing alternatives authorized by § 40-35-104(c), which include, but are not limited to, periodic confinement, work release, community corrections, probation, or judicial diversion.

Tenn. Code Ann. § 40-35-122 (2014) (emphasis added). The statute defines a "non-violent property offense" in part as "[b]urglary of an auto under § 39-14-402(a)(4)[.]" *Id.* at § 40-35-122(c)(18) (2014).

Ordinarily the trial court has discretion to determine whether a defendant should serve a sentence in confinement or should be granted an alternative sentence. However, if a defendant has been convicted of one of the enumerated non-violent property offenses listed in section 40-35-122(c), the trial court cannot order continuous confinement unless the defendant has a prior felony conviction or if the defendant has "[v]iolated the terms and conditions of the alternative sentence originally imposed upon the defendant . . . ." Tenn. Code Ann. § 40-35-122(a), (b) (2014). This court has previously held that section 40-35-122 is "clear and unambiguous; therefore, it should [be] enforced as written because 'it is generally presumed that the legislature acted purposefully in the subject included or excluded.'" *State v. Astin D. Hill*, No. W2012-02147-CCA-R3-CD, 2014 WL 683892, at * 5 (Tenn. Crim. App. Feb. 19, 2014) (quoting *State v. Pope*, 427 S.W.3d 363, 368 (Tenn. 2013)), *no perm. app. filed*; *see also State v. Hawk*, 170 S.W.3d 547, 551 (Tenn. 2005) (discussing statutory interpretation).

Further, "[s]ection 40-35-122(a) specifically and unequivocally omits the three continuous confinement provisions of Section 40-35[-]104(c) from the sentences available for a non-violent property offender." *State v. Preston Rashad Royal*, No. W2015-01334-CCA-R3-CD, 2016 WL 1446097, at *1 (Tenn. Crim. App. Apr. 12, 2016), *no perm. app. filed*. If section 40-35-122 applies, the trial court cannot order split confinement, where a defendant serves some time in continuous confinement and the remainder of the sentence on probation. *See State v. Devon Elliott Cruze*, No. E2014-01847-CCA-R3-CD, 2015 WL 5064070, at *4 (Tenn. Crim. App. Aug. 27, 2015), *no perm. app. filed*.

Here, the trial court ordered the Defendant to serve sixty days of her sentence for the automobile burglary conviction in confinement and the remainder on supervised probation. It is clear that the Defendant's automobile burglary conviction falls under the scope of Tennessee Code Annotated section 40-35-122; therefore, the trial court could not order split or continuous confinement for this conviction. Further, the presentence report reveals that the Defendant has only been convicted of misdemeanors in the past, making section 40-35-211(b)(1)(A) inapplicable. Additionally, there is no evidence that the Defendant "[v]iolated the terms and conditions of the alternative sentence originally imposed upon the [D]efendant . . . ." Thus, the trial court erred by ordering split confinement for the Defendant's sentence for her burglary of an automobile conviction. Accordingly, we reverse this portion of the trial court's sentencing order and remand for the trial court to determine which alternative sentence under Tennessee Code Annotated section 40-35-104(c) the Defendant should receive for burglary of an automobile and entry of a new judgment. We must affirm the trial court's order of split confinement for the Defendant's sentence for her misdemeanor theft conviction. Therefore, in serving the concurrent sentences, Defendant will *still* have to serve sixty days of confinement for a misdemeanor theft conviction, which is not eligible for the favorable sentencing afforded by T.C.A. § 40-35-122. It is puzzling why our General Assembly allowed sentencing more favorable for commission of a Class E felony theft than for a misdemeanor theft. *See* T.C.A. § 40-35-122(c)(11).

### III. Conclusion

Based on the foregoing, we affirm the judgments of the trial court with respect to sufficiency of the evidence for both convictions but remand for resentencing and entry of a new judgment as to Count 1, burglary of an automobile.

_____
THOMAS T. WOODALL, PRESIDING JUDGE