IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
August 18, 2020 Session

**STATE OF TENNESSEE v. MARTELL SMITH**

**Appeal from the Criminal Court for Putnam County
No. 2016-CR-591   Wesley Thomas Bray, Judge**

_____

**No. M2019-01575-CCA-R3-CD**

_____

The Defendant, Martell Smith, was convicted of the sale of 0.5 grams or more of cocaine and of the delivery of 0.5 grams or more of cocaine, both occurring in a drug-free school zone, and he received a sentence of thirty years in prison.  On appeal, he asserts that his convictions should be reversed because the State did not prove that the transaction occurred within the requisite distance of the school or that the educational establishment at issue was a school under statute, because the prosecutor committed misconduct in his opening statements, and because the trial court refused to deliver his requested special instructions.  After a thorough review of the record, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

Kendall F. Stivers, Assistant Public Defender – Appellate Division (on appeal); and Craig Fickling, District Public Defender, and Jon Hatfield, Assistant District Public Defender (at trial); for the appellant, Martell Smith.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Assistant Attorney General; Bryant C. Dunaway, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL AND PROCEDURAL HISTORY**

The Defendant was charged with the drug crimes at issue after law enforcement used a confidential informant to make a controlled purchase of drugs.  The purchase

occurred near the premises of Sylvan Prep Academy ("Sylvan Prep"), and the State introduced video evidence of the transaction, the testimony of the officers monitoring the transaction, testimony from the owner of Sylvan Prep, and evidence from the city's planning department. The Defendant challenged the State's identity evidence, the method of measuring the distance between Sylvan Prep and the site of the transaction, and Sylvan Prep's qualifications as a school.

During opening statements, the prosecutor outlined the proof that the State intended to introduce. In noting that the drug transaction was captured on film, the prosecutor stated, "You will see the video. It's one of the best videos that you will see in one of these type[s] of transactions. The [D]efendant's face is very clear." The Defendant did not object to this statement.

The confidential informant did not testify at trial. Instead, the State presented the testimony of the two law enforcement officers who monitored the transaction, Detective Brandon Tayes and Lieutenant Chase Mathis. Both testified that on February 15, 2016, the confidential informant arranged to purchase an "eight ball," — one eighth of one ounce or 3.5 grams — of crack cocaine, for three hundred dollars. This amount was typically purchased for resale rather than personal use. The confidential informant was searched prior to the transaction to ensure he did not have either drugs or additional cash on his person. He was given three hundred dollars to make the purchase, and Detective Tayes and Lieutenant Mathis drove him at around 2:00 p.m., in an unmarked police vehicle, to the fast-food restaurant where the purchase was to take place. Both Detective Tayes and Lieutenant Mathis testified that the confidential informant did not choose the location but relayed the location to law enforcement after he had a telephone conversation with the seller in the presence of Detective Tayes and Lieutenant Mathis.

Law enforcement provided the confidential informant with covert recording equipment, and Detective Tayes and Lieutenant Mathis monitored a live audio feed from the equipment as the transaction took place. The confidential informant left the unmarked police vehicle and stood by the door of the restaurant for a few minutes. Detective Tayes testified that it was cold and that the informant entered the restaurant and stood immediately within the doors, where Detective Tayes could see him through the glass. A Dodge Charger arrived, and the confidential informant entered the car for a few minutes. The confidential informant returned to the doorway, and the vehicle proceeded to the drive-through window of the fast food restaurant. Detective Tayes testified that he could see the confidential informant the entire time and that the confidential informant did not have any other interactions which could have constituted a drug transaction.

Because the vehicle involved in the drug transaction began to go toward the drive-through window, Lieutenant Mathis left the undercover police vehicle and went into the

fast food restaurant so that he could attempt to view the driver. Lieutenant Mathis passed the confidential informant, who had returned to the doorway of the restaurant, and sat at a booth that was immediately next to the drive-through lane. The Defendant drove through the drive-through, approximately eight feet away from where Lieutenant Mathis was seated, and Lieutenant Mathis identified the Defendant as the driver of the vehicle used in the transaction. Lieutenant Mathis was acquainted with the Defendant, having seen him face-to-face at least two to three times previously. He did not see anyone but the Defendant in the vehicle.

Detective Tayes took possession of the substance the confidential informant purchased and of the recording equipment when the confidential informant returned to the undercover vehicle. The confidential informant was taken to a secure location and searched again, and he no longer had possession of the money. The substance the confidential informant gave to Detective Tayes was submitted for testing. Special Agent Cassandra Franklin Beavers with the Tennessee Bureau of Investigation testified that the substance consisted of 2.7 grams of a cocaine base, which was a Schedule II substance also known as crack cocaine. Detective Tayes acknowledged he did not field-test the substance. He testified that drug sellers typically provide less than the agreed-upon purchase amount and that they typically weigh drugs with the packaging included in the weight.

The video and still photographs derived from the video were introduced into evidence. The video shows a clear picture of the seller's face and shows a small bag of a white substance dangling between the seller's fingers. Detective Tayes acknowledged that the money was not visible in the video.

While the vehicle was in the parking lot of the restaurant, Detective Tayes gave the police dispatch the license plate of the car, which was registered to Ms. Stormy Meetze. Later that afternoon, Detective Tayes and Lieutenant Mathis were alerted that the same vehicle was involved in a police call at a hotel. Detective Tayes was able to further identify the vehicle because it had damage to the passenger's side, which the confidential informant had noted in his recorded conversation with the Defendant. Ms. Meetze and the Defendant were in a hotel room, where police discovered digital scales with cocaine residue on top. The Defendant also had $460 when he was arrested. Lieutenant Mathis testified that there was a bag from the fast food restaurant in the trash can of the hotel room. Detective Tayes and Lieutenant Mathis acknowledged that the money used in the purchase was not recorded and that they could not identify any particular bill as having come from the confidential informant.

Detective Tayes testified that he did not recall if the confidential informant was also getting "consideration" for some pending charges in exchange for his participation.

Lieutenant Mathis testified that the informant was paid and that informants would not receive both pay and consideration for charges. The confidential informant was paid between eighty and one hundred dollars for making the undercover purchase. Detective Tayes acknowledged that if the sale had not been completed, the confidential informant would have received only a reduced sum of forty to fifty dollars.

Mr. Terry Clark, the "GIS" Planning Manager of the City of Cookeville Planning Department, testified that he routinely provided the city with maps indicating boundaries for zoning and other purposes. He testified that his maps were accurate and that the city relied on them. He prepared a map with a one thousand-foot boundary around the street address of the strip mall which housed Sylvan Prep. The map indicated the property he used for the buffer with a yellow line. He acknowledged that the line was around the entire property belonging to that address and that several businesses unrelated to Sylvan Prep, including "Direct TV … or Dish Network" shared that same address. He also acknowledged that a survey, which could cost a quarter of a million dollars, would provide a more accurate boundary.

Mr. John Keisling testified that he was franchisee and chairman of Performance Learning, which operates "a school called Sylvan Prep Academy." In February 2016, Sylvan Prep was located in Suite 9 of the strip mall, which was assigned a single street address. Nine other suites in the building included a children's boutique, an audiology center, and a temporary employment agency. The suite from which Sylvan Prep operated was "set back a little bit farther off" the main road, in the back left corner when viewed from the main road. Mr. Keisling agreed that he did not have authority to enter any of the spaces rented by other tenants of the strip mall.

Mr. Keisling described the Sylvan Learning Organization as "the largest tutor provider in North America" and stated he ran both Sylvan Prep and a Sylvan Learning Center out of the same space. Sylvan Prep enrolled about sixty children, and Sylvan Learning Center's Cookeville location had approximately one hundred students, with other students at satellite locations. He noted that "some home schoolers" came from as far as Southern Kentucky.

Mr. Keisling described Sylvan Prep as an accredited regional "Category III" school. He stated that it operated as a private high school and that graduates would receive diplomas and could transfer high school credits to other schools, including schools with national accreditation. Sylvan Prep did not have any signs indicating to vehicles that they were passing through a school zone and did not have crossing guards, busses, or sports teams. The students attended "on different shifts" during the operational hours of 8:00 a.m. to 7:30 p.m. and would come "at all different times" during these hours.

Neither Detective Tayes nor Lieutenant Mathis was aware that Sylvan Prep was located near the purchase site, and neither had personally measured the distance between the site of the transaction and Sylvan Prep.

The jury convicted the Defendant as charged. The trial court merged the offenses and sentenced the Defendant as a Range II offender to thirty years' confinement, with the first twenty-five years to be served at one hundred percent pursuant to statute. *See* T.C.A. § 39-17-432(c), (d), (e) (2016). The Defendant filed a motion for a new trial, which was amended to raise allegedly improper statements made in opening argument and the trial court's denial of the Defendant's motion for special jury instructions. The trial court denied the motion for a new trial, and the Defendant appeals.

## ANALYSIS

On appeal, the Defendant asserts that he is entitled to a new trial because the evidence was insufficient to show that the transaction occurred within one thousand feet of Sylvan Prep or that Sylvan Prep was a school, because the prosecutor committed misconduct in opening argument, and because he was entitled to a jury instruction regarding the definition of "school property." We conclude that the State introduced sufficient evidence to establish the distance to the transaction and Sylvan Prep's status as a school, that the Defendant is not entitled to relief for any error in opening statement, and that the trial court properly instructed the jury.

### I. Sufficiency of the Evidence

The Defendant presents no argument contesting the sufficiency of the evidence that a sale or delivery of over 0.5 grams of cocaine occurred under Tennessee Code Annotated section 39-17-417. Instead, he challenges the sufficiency of the evidence establishing that the sale occurred in a drug-free school zone, noting that Mr. Clark's testimony only established that the restaurant was within one thousand feet of the corner of the strip mall housing Sylvan Prep and not that the restaurant was within one thousand feet of the school's real property. The Defendant also challenges the sufficiency of the evidence that Sylvan Prep qualified as a "school" under the statute. The State responds that the evidence was sufficient to establish both elements.

This court must set aside a finding of guilt if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt. Tenn. R. App. P. 13(e). The question before the appellate court is whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Pope*, 427 S.W.3d 363, 368 (Tenn. 2013). This court will not reweigh or reevaluate the evidence, and it

may not substitute its inferences drawn from circumstantial evidence for those drawn by the trier of fact. *State v. Smith*, 436 S.W.3d 751, 764 (Tenn. 2014). The jury's guilty verdict, approved by the trial judge, accredits the State's witnesses and resolves all conflicts in favor of the prosecution. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The trier of fact is entrusted with determinations concerning witness credibility, factual findings, and the weight and value of evidence. *Smith*, 436 S.W.3d at 764. In reviewing the sufficiency of the evidence, we afford the State the strongest legitimate view of the evidence and all reasonable inferences that can be drawn from the evidence. *State v. Hawkins*, 406 S.W.3d 121, 131 (Tenn. 2013). "A verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, and on appeal the defendant has the burden of illustrating why the evidence is insufficient to support the verdict rendered by the jury." *Reid*, 91 S.W.3d at 277. "Circumstantial evidence alone is sufficient to support a conviction, and the circumstantial evidence need not exclude every reasonable hypothesis except that of guilt." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012).

### A. Measurement of the Drug-Free School Zone

The Defendant challenges whether the State established that the sale or delivery occurred in a drug-free school zone. Under Tennessee Code Annotated section 39-17-432 (2016), [1]

> (b)(1) A violation of § 39-17-417, or a conspiracy to violate the section, that occurs on the grounds or facilities of any school or within one thousand feet (1,000') of the real property that comprises a public or private elementary school, middle school, secondary school, preschool, child care agency, or public library, recreational center or park shall be punished one (1) classification higher than is provided in § 39-17-417(b)-(i) for such violation.

At trial, Mr. Keisling testified that Sylvan Prep was located in Suite 9 of the street address of the strip mall. According to Mr. Keisling and Mr. Clark, the nine other businesses at that address included a boutique, an audiology center, a temp agency, and a television satellite service provider or television dish store. Mr. Clark created a map showing a one-thousand-foot buffer extending from the edge of the entire property housing all of the businesses and suites of the strip mall. There was no testimony regarding Sylvan Prep's interest in the parking area. Mr. Keisling agreed that he had no authority to enter any of the other suites located at the strip mall. He further testified that

---

[1] The statute has since been amended. 2020 Tenn. Pub. Acts, ch. 803, §§ 1 to 9 (eff. Sept. 1, 2020).

the suite occupied by Sylvan Prep was in the "left back corner" when viewed from the main road. The map reveals that "left back corner" suite is the suite in the strip mall which is furthest from the fast-food restaurant where the drug transaction occurred.

The State cites to cases from other jurisdictions to argue that the boundary was correctly measured from the entire property, while the Defendant asserts that the unrelated businesses do not comprise the real property of the school. We conclude that, because the proof included a map from which it is apparent that the restaurant would be within the one-thousand foot buffer even if the measurement were taken from the far corner of the strip mall, the evidence is sufficient. In *State v. Jamie Paul Click*, the court concluded that it was unnecessary to resolve whether the school's right-of-way was part of the real property comprising the school because the State introduced evidence that a marker within the tract containing the actual school grounds was one thousand feet from the transaction. No. E2015-01769-CCA-R3-CD, 2017 WL 1189750, at *13 (Tenn. Crim. App. Mar. 30, 2017), *abrogated on other grounds by State v. Patterson*, 564 S.W.3d 423, 432-33 (Tenn. 2018). Likewise, in *State v. Marvin L. Locke*, the State's failure to establish that an athletic field across the street from the transaction was part of the real property of the school was immaterial because other testimony established that the transaction occurred within one thousand feet of the school building. No. E2005-01359-CCA-R3-CD, 2006 WL 2684827, at *2 (Tenn. Crim. App. Sept. 18, 2006). Similarly, it is unnecessary in the instant case to determine the boundaries of the real property of the school because it is apparent the transaction occurred within one thousand feet of the suite occupied by Sylvan Prep.

In *State v. Terrell B. Johnson*, the evidence at trial included testimony that a park was located 907.4 feet from the boundary of the property where the drug transaction occurred, and the prosecution also presented a map showing a one thousand-foot distance from the edge of the property where the transaction occurred to the park. No. E2012-01946-CCA-R3-CD, 2013 WL 6237090, at *7, 9 (Tenn. Crim. App. Dec. 3, 2013). The actual transaction occurred in a parking spot at the far end of the property from where the boundary was measured, making the distance to the actual site farther than 907.4 feet. *Id.* at *9. Because the map contained "a scale that [could] be used to determine the distance beyond the edge of the 907.4' measurement to the location where the Defendant possessed the drugs," this court concluded that the evidence was sufficient to uphold the drug-free school zone violation. *Id.*

In the present case, Mr. Clark testified that, as "GIS" Planning Manager, he routinely provided maps for the purposes of showing boundary areas around certain pieces of property and that the maps were accurate and relied upon by the city. The map introduced is an aerial photograph indicating a one thousand-foot buffer around the entire property of the strip mall. Contrary to the Defendant's assertion, the map does contain a

scale, which declares the "Approx Scale to Feet." Detective Tayes indicated the location of the drug transaction with an ink dot on the map. The ink dot is well within the one-thousand foot buffer, and it is apparent that the location of the drug sale occurred within one thousand feet of any of the suites within the strip mall. *Id.*; *see*, *e.g.*, *United States v. Glover*, 153 F.3d 749, 756 (D.C. Cir. 1998) (because the distance to the door of the convenience store was 674 feet, a rational juror could have concluded such a store in a residential area was less than a football field in length, particularly given video evidence of the store's interior and that the actual transaction occurred within one thousand feet). Accordingly, the evidence is sufficient to support the conclusion that the sale occurred within one thousand feet of the real property comprising a Sylvan Prep.

## B. Definition of "School"

The Defendant also contends that the State failed to establish that Sylvan Prep was a school within the meaning of the statute. The State responds that Sylvan Prep was a secondary school within the statutory definition. We conclude that the evidence was sufficient to establish that Sylvan Prep was a secondary school.

Tennessee Code Annotated section 39-17-432(b)(1) (2016) provides for enhanced punishment when the sale or delivery of a controlled substance occurs within one thousand feet of the real property comprising "a public or private elementary school, middle school, secondary school," or other facilities not at issue here. A secondary school is one that provides a secondary education, or "education normally available and required by state standards to be taught to children enrolled in grades seven through twelve." T.C.A. § 49-6-410(a), (b). A child's parent, guardian, or legal custodian must send a child between six and seventeen years of age to a public or nonpublic school. T.C.A. § 49-6-3001(c)(1). A nonpublic school is a church-related school, home school, or private school. T.C.A. § 49-6-3001(c)(3)(A). A private school is further defined as "a school accredited by, or a member of, an organization or association approved by the state board of education as an organization accrediting or setting academic requirements in schools," or a school "that has been approved by the state, or is in the future approved by the commissioner in accordance with rules promulgated by the state board of education." T.C.A. § 49-6-3001(c)(3)(A)(iii). Under the Rules of the State Board of Education, a Category III school is a regionally accredited school. Tenn. Comp. R. & Regs. 0520-07-02-.01. The school must be accredited by one of the specified regional accreditation associations. Tenn. Comp. R. & Regs. 0520-07-02-.04. Students are free to transfer without loss of credit between Category I schools (schools approved individually by the State Department of Education), Category II schools (schools which belong to an agency whose accreditation process is approved by the State Board of Education), and Category III schools. Tenn. Comp. R. & Regs. 0520-07-01-.01, -.03.

Mr. Keisling testified at trial that Sylvan Prep was a private high school and a regionally accredited Category III school. Graduates of Sylvan Prep receive high school diplomas, and students are able to transfer credits earned at Sylvan Prep to public or parochial schools if they switch schools. Although Mr. Keisling also testified that the road next to the school did not have a sign indicating a school zone, that the students attended "on different shifts" between 8:00 a.m. and 7:30 p.m., and that there were no busses, no crossing guards, and no sports teams, the Defendant has cited to no statutory or regulatory authority for the proposition that any of these indicators are necessary to the determination of what constitutes a "secondary school" under the statute. Nor does the Defendant point to any statutory requirement necessary for a "secondary school" that Sylvan Prep fails to meet. Instead, we are left with the statutory definition of a secondary school as one that provides a secondary education, or "education normally available and required by state standards to be taught to children enrolled in grades seven through twelve." T.C.A. § 49-6-410(a), (b). According to Mr. Keisling's testimony, Sylvan Prep provided such an education, awarding graduates high school diplomas and allowing them to transfer credits earned for courses taken at Sylvan Prep. Accordingly, the evidence presented at trial was sufficient to enable a rational trier of fact to conclude that Sylvan Prep was a secondary school. The Defendant is not entitled to relief.

## II. Prosecutorial Misconduct in Opening Statements

The Defendant asserts that the prosecutor committed misconduct by vouching for the quality of the video evidence and the identity of the Defendant as the seller in his opening statement. The State responds that the comments were not improper and that the Defendant has waived the issue. The Defendant disputes waiver and asserts that he is in any event entitled to relief under either plain error or plenary review.

No contemporaneous objection was lodged to the prosecutor's statement that the video was "one of the best" of its type and that the Defendant's face was clear in the video. The Defendant's amended motion for a new trial raised the issue that the prosecutor's comments were improper. The State asserts that the failure to object contemporaneously constitutes waiver and that the issue must be reviewed pursuant to plain error review. For an error to constitute plain error sufficient to merit relief, the following factors must be present:

> (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the accused must have been adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is necessary to do substantial justice

*State v. Bishop*, 431 S.W.3d 22, 44 (Tenn. 2014) (citing *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). Additionally, "the plain error must be of such a great magnitude that it probably changed the outcome" of the proceeding. *Id.* (quoting *Adkisson*, 899 S.W.2d at 642). This court need not consider all the factors if it is clear that the defendant will fail to establish at least one. *State v. Jordan*, 325 S.W.3d 1, 58 (Tenn. 2010).

The Defendant counters that *State v. Hawkins*, 519 S.W.3d 1, 48 (Tenn. 2017), stands for the proposition that an appellate court will apply plenary review on a case-by-case basis to prosecutorial misconduct in opening or closing argument. In *Hawkins*, a death penalty case, the defendant raised four instances of alleged misconduct in closing statements, none of which drew a contemporaneous objection and only two of which were raised in the motion for a new trial. *Id.* This court reviewed all four instances for plain error, *State v. James Hawkins*, No. W2012-00412-CCA-R3-DD, 2015 WL 5169157, at *24 (Tenn. Crim. App. Aug. 28, 2015), but the Tennessee Supreme Court applied plenary review to the two issues raised in the motion for a new trial, one of which had been the subject of a previous motion in limine, *Hawkins*, 519 S.W.3d at 48. We note that one of the prosecutor's statements which received plenary review violated the trial court's previous ruling that the prosecutor should not use the term "rape" when referring to an offense not charged in the case. *Id.* The Tennessee Supreme Court did not state its rationale for applying plenary review to the remaining issue, but we note that appellate courts have applied a "heightened standard of scrutiny … to the review of a sentence of death." *Harris v. State*, 947 S.W.2d 156, 178 (Tenn. Crim. App. 1996) (order denying petition to rehear). In addition, courts generally apply plain error review when the defense has failed to object to the contents of the prosecutor's argument. *See State v. Jordan*, 325 S.W.3d 1, 58 (Tenn. 2010) (reviewing closing argument for plain error when the defendant did not contemporaneously object); *State v. Thomas*, 158 S.W.3d 361, 413 (Tenn. 2005) (reviewing prosecutor's opening remark for plain error when there was no objection); *State v. Richard Shawn O'Rourke*, No. M2017-00375-CCA-R3-CD, 2018 WL 4492744, at *4 (Tenn. Crim. App. Sept. 19, 2018) (applying plain error review to opening statement when there was no objection and the issue was not preserved in the motion for a new trial).

Regardless of whether or not the issue is reviewed for plain error, we conclude the Defendant is not entitled to relief. All parties have a right to give an opening statement to the jury "setting forth their respective contentions, views of the facts and theories of the lawsuit." T.C.A. § 20-9-301. Such statements "'are intended merely to inform the trial judge and jury, in a general way, of the nature of the case and to outline, generally, the facts each party intends to prove.'" *State v. Reid*, 164 S.W.3d 286, 343 (2005) (quoting *Harris v. Baptist Mem'l Hosp.*, 574 S.W.2d 730, 732 (Tenn. 1978)). Argument should be predicated on evidence introduced at trial and may include a summary of the facts which

will support the theory of the case, as long as those facts are likely to be supported by admissible evidence. *State v. Sexton*, 368 S.W.3d 371, 415 (Tenn. 2012). Argument by counsel is generally "'a valuable privilege that should not be unduly restricted.'" *Thomas*, 158 S.W.3d 361, 412 (Tenn. 2005) (quoting *Smith v. State*, 527 S.W.2d 737, 739 (Tenn. 1975)). While attorneys generally are given leeway in argument, the State may not deliver argument designed to inflame the jury or which strays from the evidence or pertinent issues. *Id.* at 413. "Prosecutorial misconduct during argument does not constitute reversible error unless it appears that the outcome was affected to the defendant's prejudice." *Id.* In evaluating prejudice, the court considers: (1) the conduct complained of viewed in context and in light of the facts and circumstances of the case; (2) curative measures undertaken by the trial court and the prosecution; (3) the intent of the prosecutor in making the improper statement; (4) the cumulative effect of the improper conduct when combined with and any other errors in the record; and (5) the relative strength or weakness of the case. *State v. Larkin*, 443 S.W.3d 751, 813 (Tenn. Crim. App. 2013).

This court has recognized five general areas of prosecutorial misconduct in closing argument: 1) intentionally misstating evidence or misleading the jury regarding inferences it may draw; 2) expressing personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant; 3) using argument calculated to inflame the passions or prejudices of the jury; 4) using argument which would divert the jury from its duty to determine facts based on evidence by interjecting issues broader than the guilt or innocence of the accused or by making predictions regarding the consequences of the verdict; 5) intentionally referring to or arguing facts outside the record unless they are matters of common public knowledge. *State v. Goltz*, 111 S.W.3d 1, 6 (Tenn. Crim. App. 2003). These principles have also been applied to opening argument. *Richard Shawn O'Rourke*, 2018 WL 4492744, at *5.

The Defendant objects to the following statement made to the jury in opening argument: "You will see the video. It's one of the best videos that you will see in one of these type[s] of transactions. The [D]efendant's face is very clear." The Defendant asserts that, by commenting on quality of the video evidence, the prosecutor was expressing his personal belief as to the truth or falsity, or perhaps the reliability, of the video implicating him. The Defendant likewise argues that the prosecutor's identification of him as the person on the video was error. Although the relative quality of the video recording compared to other recorded drug purchases was not particularly relevant and not predicated on evidence introduced at trial, we cannot conclude that the Defendant is entitled to relief in light of the facts and circumstances of the case, the cumulative effect of the statement, and the overall strength of the evidence. *See Larkin*, 443 S.W.3d at 813. The same considerations lead to the conclusion that the Defendant is not entitled to relief based on any statement from the prosecutor expressing an opinion on the Defendant's

identity as the perpetrator. *Id.* The jury was able to view the video, which, as promised, delivered a clear view of the offender, to determine the issue of identity. The prosecution presented a witness who was familiar with the Defendant and who identified the Defendant as the lone person in the vehicle used in the transaction. The vehicle used in the drug transaction, as identified by its license plate and damage to the passenger's side, was at the hotel where the Defendant was staying. In the trash of the hotel room was a bag of food from the fast food restaurant patronized by the offender. The Defendant was in possession of over $300 in cash and digital scales with cocaine residue. We cannot conclude that any error in opening statements affected the outcome to the Defendant's prejudice. *Thomas*, 158 S.W.3d at 413. We likewise cannot conclude that a substantial right of the accused was adversely affected, that consideration of any error is necessary to do substantial justice, or that any error probably changed the outcome of the proceedings. *Bishop*, 431 S.W.3d at 44. The Defendant is not entitled to relief.

### III. Special Instructions

The Defendant also asserts that the trial court erred in failing to provide the jury a definition of "school property" found in Title 49 of Tennessee Code Annotated, related to "Education." The State contends that this argument is waived because the motion for a new trial was not adequately specific in raising it and because the record does not include the trial court's ruling. The Defendant responds that the motion for a new trial was adequately specific and that the record is sufficient to allow review.

Prior to trial, the Defendant filed two requests for pattern jury instructions, including an instruction on entrapment, and three requests for special jury instructions. The first requested special instruction addressed the testimony of a paid informant. The confidential informant did not testify, so this instruction was not applicable to the evidence presented at trial. The second special instruction requested the court to combine the school zone element with the elements of the sale or delivery rather than following the pattern instructions by asking the jury to determine whether the transaction occurred in a school zone only after the jury had concluded there was a transaction.[2] The third requested special instruction, regarding school property, is at issue on appeal. The Defendant requested the following instructions:

> School means any public or private elementary, secondary school; and "school property" means all property used for school purposes, including, but not limited to school playgrounds.

---

[2] The Defendant's contention that this was a request for "modified pattern" instructions is belied by the heading of the motion itself, which designates the motion as "Defendant's Request For Special Jury Instruction Number Two."

A school safety zone is the territory located within one thousand feet (1,000') of school property.

This requested instruction is based on the definitions of "school," "school property," and "school safety zone" found in Title 49, related to Education, of the Tennessee Code Annotated. T.C.A. § 49-2-116(b)(1), (b)(2), (c) (2016).[3] The record reflects that, during trial, the trial court expressed its intention to discuss jury instructions with the State and Defendant and that the State asked for a preliminary copy of the definition of the offenses and ballot form. However, no discussion of the jury instructions, in particular the requested instructions, is included in the appellate record. The record contains the jury instructions, and none of the special instructions were given.

The State contends that the issue was not adequately raised in the motion for a new trial. The motion for a new trial raised both the trial court's refusal to give the pattern instructions on entrapment and the denial of "the Defendant's pretrial motion for special jury instructions." As noted above, one of the three requested special instructions was not applicable because the confidential informant did not testify. While the Defendant did not specify which special instruction he was raising or whether he was raising both, and while the discussion of the issue at the hearing was cursory, we conclude that the motion was adequately specific to preserve a challenge to the two requested special instructions.

The State argues that this court should not review the issue because the record on appeal is not adequate in that there is no transcript of the trial court's ruling on the motion and no written order denying the motion. The appellant has the duty to prepare a record which conveys "a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b). In the absence of a transcript, we presume that the absent material would support the trial court's ruling. *See State v. Richardson*, 875 S.W.2d 671, 674 (Tenn. Crim. App. 1993). The record establishes that the trial court did not give the requested instructions. However, there is no transcript of the trial court's denial of the requested instruction which would provide either the basis of the ruling or any concessions made by defense counsel. Thus, we must presume the absent portion of the transcript would support the trial court's ruling.

---

[3] We note that the definition of "school" in this section includes a "state college of applied technology," a type of school not protected by the criminal statute creating drug-free school zones. T.C.A. § 49-2-116(b)(1); T.C.A. § 39-17-432 (2016) (creating a zone around any public or private elementary school, middle school, secondary school, preschool, child care agency, or public library, recreational center or park).

In any event, the jury was instructed that it must find that the sale or delivery "occurred within one thousand feet (1,000') of the real property that comprises a public or private elementary school, middle school or secondary school." This language tracks the statute making the offense punishable as one classification higher if the sale or delivery "occurs … within one thousand feet (1,000') of the real property that comprises a public or private elementary school, middle school, [or] secondary school…." T.C.A. § 39-17-432(a) (2016). "The refusal to grant a special request for instruction is error only when the general charge does not fully and fairly state the applicable law." *State v. Hanson*, 279 S.W.3d 265, 280 (Tenn. 2009). The instruction given was a correct and complete jury charge, *see State v. Garrison*, 40 S.W.3d 426, 432 (Tenn. 2000), and contained no statement which was inaccurate, inapplicable, or confusing, *see State v. Hatcher*, 310 S.W.3d 788, 812 (Tenn. 2010). The Defendant's insistence on an instruction defining "school property" is puzzling because the phrase "school property" does not appear in the criminal statute, which instead used the phrase "real property that comprises a … school." There was no call here to provide a definition of a phrase that did not appear in the statute. Furthermore, the language the Defendant cites pertains to the authority of the director of schools to post signs declaring "that the delivery or sale of a controlled substance …  to a minor in the school safety zone will subject the offender to an enhanced punishment." T.C.A. § 49-2-116(d). The language advocated by the Defendant accordingly pertains to signs regarding sale of a controlled substance to a minor in the school safety zone, not the offense of selling controlled substances in general in a drug-free school zone. Furthermore, the definition requested does not appear to be limited to real property, as required by the criminal statute. The trial court properly used the terminology and definitions in the criminal statute enhancing the Defendant's offense rather than the definition in Title 49, related to education and signage.

## CONCLUSION

Based on the foregoing analysis, we affirm the trial court's judgments.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE