# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs October 5, 2021

## STATE OF TENNESSEE v. BERNARD WOODARD

**Appeal from the Criminal Court for Putnam County**
**No. 18-CR-818      Wesley Thomas Bray, Judge**

_____

## No. M2020-01538-CCA-R3-CD

_____

A jury convicted the Defendant, Bernard Woodard, of burglary of a building other than a habitation, theft of property valued $2,500 or more, and Class E felony evading arrest in a motor vehicle, and he received an effective sentence of eighteen years in prison as a career offender. On appeal, the Defendant asserts that his right to an impartial jury was violated by the racial composition of the jury venire, that the State did not establish the value of the stolen property, that the prosecutor committed misconduct in closing argument, and that the trial court erred in imposing partially consecutive sentences. After a thorough review, we discern no error and affirm the judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

Craig P. Fickling (on appeal), District Public Defender, and Gordon Allen Byars (at trial), Cookeville, Tennessee, for the appellant, Bernard Woodard.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Assistant Attorney General; Bryant C. Dunaway, District Attorney General; and Brett Gunn and Mark Gore, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL AND PROCEDURAL HISTORY

The Defendant and two co-defendants, Mr. Adam Loper and Ms. Rebecca Flueras, entered a gas station, and the co-defendants filled two suitcases with over $3,000 worth

of cigarettes from a back storeroom while the Defendant spoke to the clerk about vape products. The Defendant drove away from the gas station with the co-defendants in the vehicle, and he failed to stop for five miles on the interstate while pursued by law enforcement. The defense theory at trial was that the co-defendants acted alone in committing the burglary and theft and that the Defendant did not know about or participate in the crimes.

Ms. Sydnee Quinones and Mr. Alexander Davis were working at the truck stop gas station around 2:00 a.m. on June 6, 2018. Ms. Quinones testified that the stockroom where the cigarettes were kept was accessible only through another room filled with cleaning supplies and that no customers had permission to be in the cigarette storage room. Mr. Davis confirmed that the area was not open to the public, and he stated he believed there was an "employees only" sign on the door. He testified that the bathrooms and shower area of the gas station were clearly marked.

Ms. Quinones was in the beverage aisle at the time the Defendant and co-defendants entered, and Mr. Davis was in an area for employees only, retrieving freezer products. Ms. Quinones testified that the Defendant approached her to ask about the prices of vape products and that he was holding money in his hand. The Defendant's hair appeared to be long dreadlocks. Ms. Quinones was retrieving the vape products from behind the counter and checking prices when she noticed the co-defendants emerge from the stockroom. She left the cash register to alert Mr. Davis, and, per his instructions, she returned to the register and called 911.

Mr. Davis testified that the two co-defendants were dragging suitcases and that he followed them outside, trying to stop them. Adhering to company policy, he never came into physical contact with them. The Defendant,[1] who was walking behind Mr. Davis, asked him if the co-defendants were stealing from the store, and Mr. Davis initially thought the Defendant was a good Samaritan attempting to aid him. Mr. Davis followed the co-defendants to their car, which was parked in a restaurant parking lot next door. When they arrived at the car, the Defendant told the co-defendants to put the suitcases in the trunk, got in the driver's seat, and drove away. Mr. Davis stated he was close enough to touch the car when he heard the Defendant instruct the co-defendants to put the suitcases into the trunk. When Mr. Davis returned to the store, he provided a description of the vehicle and the temporary tag number to the 911 operator.

On cross-examination, Mr. Davis did not recall saying at the preliminary hearing that he was fifty yards from the car when the Defendant spoke, but he stated that the

---

[1] Although Mr. Davis did not identify the Defendant at trial, there was no dispute that the Defendant was the individual depicted in the surveillance videos.

restaurant was fifty yards from the gas station. He testified that the end of the structure housing the gas station was twenty to thirty yards from the restaurant parking area, that he was standing on the gas station's truck scales when he heard the Defendant make the statement, and that the Defendant's vehicle was parked immediately next to the scales. He agreed that the outside surveillance video showed that he was only out of the frame for twenty seconds and that he came back into the frame with his hands in his pockets. Asked whether he could cross twenty to thirty yards in that time, he stated that he was only estimating distance and that it might have been closer than twenty yards. He did not know if the area in which the Defendant parked was frequently used by gas station customers.

On cross-examination, Ms. Quinones agreed that she never saw the Defendant in the stockroom, never saw him speak to the co-defendants, and never saw him with any cigarettes. Mr. Davis likewise did not see the Defendant speak to the co-defendants. Ms. Quinones testified that the Defendant was polite, did not threaten her, never seemed to be in a hurry, and did not flee or appear worried when he heard Mr. Davis accuse the co-defendants of taking cigarettes. Mr. Davis agreed that the Defendant was not in a hurry and was walking behind him. When Mr. Davis asked the co-defendants about the contents of the suitcases, the Defendant acted surprised and seemed startled. Mr. Davis agreed that the Defendant could not have completed his purchase of vape because Ms. Quinones was engaged in calling 911. Ms. Quinones also testified that the Defendant could hear her making the call to 911.

Video of the offenses, taken from several vantage points, was introduced at trial. The video showed the Defendant enter the store and walk to the door leading to the cigarette storage room. He remained standing by the door as the co-defendants entered with suitcases. The co-defendants walked toward the Defendant, and as they arrived at the door, he moved. The footage from the storage room showed that the co-defendants entered and immediately loaded the suitcases with numerous cartons of cigarettes. After leaving the stockroom door, the Defendant approached Ms. Quinones in the beverage aisle, and she accompanied him to the front of the store, where she retrieved different products for him from behind the cash register. The Defendant had money in his hand. According to Ms. Quinones's testimony, she moved away from the register at the point that she noticed the co-defendants emerge from the secure area, and the video showed that the Defendant put his money away immediately when she left. The video then showed the Defendant following Mr. Davis and the co-defendants out of the store.

Trooper William Looper with the Tennessee Highway Patrol received a report regarding the crime, with a description of the vehicle, a license plate number, and information that the vehicle was driving east on Interstate 40. Trooper Looper entered the interstate, and he immediately saw a vehicle matching the vehicle's description and

the first three digits of the license plate number he had been given. Trooper Looper activated his lights and, shortly thereafter, his siren. The vehicle nevertheless remained on the interstate for five miles without stopping. The vehicle was not speeding and at one point slowed down to thirty-five miles per hour. The driver turned on his blinker and pulled partially onto the shoulder but then returned to the road and kept driving. The driver exited the interstate, and the Defendant and co-defendants were apprehended on the exit, which had been blocked off by city police officers. Trooper Looper testified that the Defendant had a close shaven head and no dreadlocks at the time he was pulled over. Trooper Looper agreed on cross-examination that there were rock cages in some areas on the side of the road and that he would have had to stand close to the fog line if the Defendant's vehicle had pulled over in those areas. He agreed that the Defendant took the next available exit, which was five miles down the road. A video of the pursuit was introduced into evidence.

Officer Kenneth Fry with the Cookeville Police Department arrived at the scene of the traffic stop, retrieved the cigarettes in the suitcases, and returned them to the gas station to determine the value of the merchandise. Mr. Davis testified that at around 3:30 a.m., he scanned the cigarettes to determine the price, and he printed a voided receipt, which was introduced into evidence. Mr. Davis stated that the price reflected the amount that would be charged to a customer, and the total amount, excluding tax, was $3,034.80. Ms. Quinones testified that patrons may purchase multiple cartons of cigarettes but that she had never sold someone seventy cartons. Mr. Davis stated that no individual customer could buy seventy cartons of cigarettes and that it would be "against the law" and in violation of the gas station's contract with the cigarette vendors to sell cigarettes in that volume. Mr. Davis testified that the gas station did not sell cigarettes at cost.

The Defendant moved for judgment of acquittal on the felony theft, arguing that the State had not established value because testimony established that no customer could have purchased the cigarettes for the price reflected on the receipt. The trial court denied the motion. In closing argument, the State argued that value was established and also argued that the Defendant's actions with regard to the co-defendants were not consistent with innocence:

So what do you do if you're an innocent [Defendant] at that point?

You say why are you getting your suitcases out of the car, we're not sleeping here, this is not our destination, what's going on. Obviously he didn't need to do that because he knew. But it just goes to show you how when you go down this road with the innocent [Defendant] how many things he would have had to have glossed over in order to really not know what was going on. Okay, I got you, I got you, you can take your suitcases

in, but I understand you don't want to leave your suitcases in the car. I mean this is just a ridiculous conversation that would have had to have been had in the movement from the [restaurant] to the [gas station], unless you knew why they were taking the suitcases in there.

Okay, so there, there we see [the Defendant]. There is no explanation here for why he's got these dreadlocks on. There really is not. There's not. And why, I get it, I get it, you all have got your suitcases, I'm just going to put these dreads on and go in there and buy me Juul, just for the fun of it, that's what I'm going to do. Let's just fooling everybody in the store, you all have got your suitcases, they're going to get a kick out of this at 2:30 in the morning. I mean not a lot going on, but we're going to spice it up with the suitcases and dreads. Really? Why would somebody be doing that unless he didn't want to be able to be identified, why would he bother, I mean how many of you all would disguise your identity and put something on when you've gone into the convenience store to buy something? I'm going to guess that's a big fat zero right there.

The defense argued that the State had not proven beyond a reasonable doubt that he was criminally responsible for the offenses and that it had not established the value of the cigarettes. The jury convicted the Defendant of burglary of a building other than a habitation, theft of property valued $2,500 or more, and Class E felony evading arrest.

At the sentencing hearing, the State introduced proof of numerous prior offenses, including eight prior felonies, two more than necessary to establish the Defendant as a career offender. *See* T.C.A. § 40-35-108(a)(3) (2018). Ms. Dannon Stickler, who prepared the presentence report, testified that most of the offenses were theft-related and that it had been twenty-three years since the Defendant was last sentenced for a felony charge, although he had recently entered a guilty plea for an offense in Knox County. A presentence report, reflecting numerous misdemeanor offenses, including drug offenses, alcohol offenses, driving offenses, and misdemeanor thefts, was introduced into evidence. The trial court found that the Defendant was a career offender and sentenced him to twelve years for burglary, twelve years for theft of property valued $2,500 or more, and six years for evading arrest. The trial court found that the Defendant was a professional criminal who had knowingly devoted his life to criminal acts as a major source of livelihood and that he was an offender with an extensive record of criminal activity. T.C.A. § 40-35-115(b)(1), (2) (2018). The trial court recognized that the offenses were not violent but rather "a crime of boldness." Noting that the Defendant's manner of driving was dangerous due to his low speed on the interstate, the trial court found that the evading arrest offense was "egregious." The trial court ordered the two twelve-year sentences to be served concurrently with one another and the six-year sentence to be

served consecutively to the twelve-year sentences, noting that that confinement was necessary to protect society by restraining a defendant with a long history of criminal conduct, to avoid depreciating the seriousness of the offense, and as a deterrent. T.C.A. § 40-35-103(1)(A)-(B).

The Defendant moved for a new trial, arguing numerous issues, including that the evidence was insufficient, in particular regarding the value of the property, that the State's closing argument amounted to a comment on the Defendant's decision not to testify, and that the trial court erred in imposing consecutive sentences and finding the Defendant to be a career offender. The motion for a new trial was denied, and the Defendant appeals.

## ANALYSIS

On appeal, the Defendant argues that his Sixth Amendment right to an impartial jury was violated because of the exclusion of African Americans from the venire, that the evidence was insufficient to sustain the jury's finding on the value of the property, that the prosecutor, during closing argument, impermissibly commented on the Defendant's right to remain silent, and that the trial court erred in imposing consecutive sentences. Discerning no error, we affirm.

### I.  Racial Composition of the Jury Venire

The Defendant asserts that his Sixth Amendment right to an impartial jury was violated because the venire did not represent a fair cross-section of the community due to a systematic exclusion of African Americans. Acknowledging that the issue was not preserved below, the Defendant asks for plain error review. The State asserts waiver. We conclude that the issue is waived because the record on appeal does not permit meaningful appellate review.

The United States Supreme Court has held that the Sixth Amendment requires that the jury be drawn from a fair cross-section of the community *Taylor v. Louisiana*, 419 U.S. 522, 530 (1975). In order to establish a prima facie case that the right to trial by jury was violated because the jury did not represent a fair cross-section of the community, the Defendant must show:

"(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process."

- 6 -

*State v. Hester*, 324 S.W.3d 1, 39 (Tenn. 2010) (quoting *Duren v. Missouri*, 439 U.S. 357, 364 (1979)).

The Defendant asserts there were no African Americans in the jury venire and that the venire, accordingly, did not represent a fair cross-section of the community. However, we agree with the State that the utter absence of anything in the record pertinent to this issue precludes review. The voir dire is included in the record, but there is never any mention of the racial composition of either the venire or the jurors who were selected. A challenge to the jury on this basis was not raised prior to trial. The issue was also not raised in the motion for a new trial or in the hearing on the motion, and accordingly, there is no proof in the record regarding the racial composition of the county, the venire, or the jurors and no proof regarding whether any underrepresentation was due to systematic exclusion. For these reasons, the issue is waived. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); Tenn. R. App. P. 3(e); Tenn. R. App. P. 24(b) ("[T]he appellant shall have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal."); *State v. Thompson*, 36 S.W.3d 102, 108 (Tenn. Crim. App. 2000) (determining that the failure to prepare a proper record results in waiver). Plain error relief requires that the record clearly establish what happened in the trial court, but in this case, the record on appeal contains nothing which would allow us to review the claim. *See State v. Bishop*, 431 S.W.3d 22, 44 (Tenn. 2014). Accordingly, the Defendant is not entitled to relief.

## II. Sufficiency of the Evidence Regarding Value

The Defendant asserts that his theft conviction should be reduced to a misdemeanor because the State failed to prove that the value of the property was $2,500 or more. Because proof of fair market value does not require the State to prove that the property could have been sold in a single transaction to one particular individual, the evidence at trial that the gas station would have charged $3,034.80 for the cigarettes, excluding tax, was sufficient to establish value.

This court must set aside a finding of guilt if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt. Tenn. R. App. P. 13(e). The question before the appellate court is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Pope*, 427 S.W.3d 363, 368 (Tenn. 2013). This court will not reweigh or reevaluate the evidence, and it

may not substitute its inferences drawn from circumstantial evidence for those drawn by the trier of fact. *State v. Smith*, 436 S.W.3d 751, 764 (Tenn. 2014). The jury's guilty verdict, approved by the trial judge, accredits the State's witnesses and resolves all conflicts in favor of the prosecution. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The trier of fact is entrusted with determinations concerning witness credibility, factual findings, and the weight and value of evidence. *Smith*, 436 S.W.3d at 764. In reviewing the sufficiency of the evidence, we afford the State the strongest legitimate view of the evidence and all reasonable inferences that can be drawn from the evidence. *State v. Hawkins*, 406 S.W.3d 121, 131 (Tenn. 2013). "A verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, and on appeal the defendant has the burden of illustrating why the evidence is insufficient to support the verdict rendered by the jury." *Reid*, 91 S.W.3d at 277. "Circumstantial evidence alone is sufficient to support a conviction, and the circumstantial evidence need not exclude every reasonable hypothesis except that of guilt." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012).

The Defendant does not dispute the sufficiency of the evidence supporting his convictions for burglary and Class E felony evading arrest in a motor vehicle. *See* T.C.A. § 39-11-402(2) (defining criminal responsibility); T.C.A. § 39-14-402(a)(1) (2018)[2] (making it an offense to enter "a building other than a habitation (or any portion thereof) not open to the public" with the intent to commit theft); T.C.A. § 39-16-603(b)(1) (2018) (making it unlawful for a person operating a motor vehicle on an highway to intentionally flee or attempt to avoid a law enforcement officer after having received a signal to stop). He argues only that his theft conviction should be reduced to a misdemeanor for failure to prove value.

The Defendant was convicted of theft of property valued at $2,500 or more but less than $10,000. A theft is committed when "with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103(a). A person is criminally responsible for the conduct of another when, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." T.C.A. § 39-11-402(2). Theft becomes a Class D felony if the value of the property is $2,500 or more but less than $10,000. T.C.A. § 39-14-105(a)(3) (2018). The monetary value of property from multiple criminal acts charged as a single count "shall be aggregated to establish value under this section." T.C.A. § 39-14-105(b)(2). "Value" is generally defined as:

---

[2] The statutory provisions regarding the offense of burglary have since been moved to Tennessee Code Annotated section 39-13-1002.

(i) The fair market value of the property or service at the time and place of the offense; or

(ii) If the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense.

T.C.A. § 39-11-106(a)(36)(A) (2018). The jury is tasked with determining the value of the stolen or damaged property. *State v. Jones*, 589 S.W.3d 747, 757 (Tenn. 2019) (citing T.C.A. § 39-11-115). The value of property is the fair market value rather than the original cost of the item. *State v. Hamm*, 611 S.W.2d 826, 829 (Tenn. 1981). If value cannot be determined, the value is deemed to be under fifty dollars. T.C.A. § 39-11-106(a)(36)(C).

The Defendant contends that because the proof at trial included testimony that the gas station could not sell seventy cartons of cigarettes to one individual, the State failed to establish the value of the cigarettes. According to the Defendant, the State did not establish fair market value because the Defendant could not personally have purchased all of the cigarettes, and therefore, the proper value should have been the wholesale value of replacement, which was not proven at trial and must be deemed to be less than fifty dollars. However, there is no requirement in the statute that the fair market value be limited to the purchasing power of one individual or that it be limited to the value of goods that could change hands during a single transaction. The proof at trial included testimony and a receipt reflecting that, if the gas station had sold each of the cartons which the Defendant and co-defendants stole, it would have received $3,034.80, plus tax. According to the proof at trial, the gas station could have sold the cigarettes to any number of willing buyers, carton by carton, for the amount reflected on the receipt. Evidence regarding the retail price charged by a store which is the victim of a theft is in general sufficient proof of the fair market value of the property. *See State v. Denton Jones*, No. E2017-00535-CCA-R3-CD, 2018 WL 3199553, at *10 (Tenn. Crim. App. June 28, 2018) (testimony regarding the manufacturer's suggested retail price was sufficient to establish the value of fitness trackers stolen from a store), *aff'd by State v. Jones*, 589 S.W.3d 747 (Tenn. 2019); *State v. Rodger Watts*, No. W2010-00705-CCA-R3-CD, 2011 WL 1220766, at *3 (Tenn. Crim. App. Mar. 31, 2011) (testimony that the items stolen from a store were rung up at a register at a value of $149,891 was sufficient to establish value over $10,000); *State v. James Edgar Leverette*, No. M2009-01286-CCA-R3-CD, 2010 WL 2943290, at *2 (Tenn. Crim. App. July 26, 2010) (the jury determined that the retail price, and not the wholesale price, was the fair market value). Because there is nothing in the statute limiting fair market value to a single transaction, a reasonable trier of fact could have found from the proof that the property was worth $2,500 or more but less than $10,000.

### III. Closing Argument

The Defendant next asserts that the prosecutor impermissibly commented during closing argument on his Fifth Amendment right to remain silent. The State responds that the issue is waived, that the Defendant has not requested plain error review, and that the Defendant would in any event not be able to establish plain error. We agree that the issue is waived.

The Defendant points to the prosecutor's argument that the Defendant's actions were inconsistent with innocence, including the prosecutor's argument that the Defendant, if innocent, would have questioned the co-defendants' choice to bring their suitcases to the gas station and the prosecutor's argument that there was no innocent explanation for the Defendant's choice to wear a wig with dreadlocks into the store. However, the Defendant did not lodge a contemporaneous objection to the prosecutor's statements. "Failure to object to a prosecutor's statements during closing argument results in waiver on appeal." *State v. Henretta*, 325 S.W.3d 112, 125 (Tenn. 2010). In the written motion for a new trial, the Defendant raised the issue that the prosecutor had allegedly commented on his Fifth Amendment right to remain silent, but he never identified the objectionable comments to the trial court. The issue was not addressed during the hearing, and the trial court did not make any specific ruling or findings on the issue. On appeal, the Defendant does not request plain error review or address the factors relevant to plain error. We conclude that the issue is waived. *See* Tenn. R. App. P. 36(a); Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court.").

### IV. Sentencing

The Defendant also seeks relief from his sentence, asserting that the trial court erred in imposing consecutive sentences. We conclude that the trial court did not abuse its discretion in sentencing.

A trial court's sentencing decisions are generally reviewed for abuse of discretion, with a presumption of reasonableness granted to within-range sentences that reflect a proper application of the purposes and principles of sentencing. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). Likewise, the "standard of appellate review for consecutive sentencing is abuse of discretion accompanied by a presumption of reasonableness." *State v. Pollard*, 432 S.W.3d 851, 859 (Tenn. 2013). The presumption of reasonableness applies only when the trial court has provided reasons on the record establishing at least one of the seven statutory bases for imposing consecutive sentences delineated in Tennessee Code Annotated section 40-35-115(b). *Id.* at 861.

The parties agree on appeal that the Defendant was a career offender and that the trial court properly imposed sentences of twelve years for the Class D felonies and six years for the Class E felony. However, the Defendant argues that the trial court improperly sentenced him to consecutive sentences under Tennessee Code Annotated section 40-35-115(b). Under statute, a court has the discretionary authority to impose consecutive sentences based on its findings of fact:

> (b) The court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:
>
> (1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;
>
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
>
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high;
>
> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;
>
> (6) The defendant is sentenced for an offense committed while on probation; or
>
> (7) The defendant is sentenced for criminal contempt.

T.C.A. § 40-35-115(b) (2018).

The trial imposed consecutive sentences after finding that the Defendant was a professional criminal who had knowingly devoted his life to criminal acts as a major source of livelihood and that he was an offender whose record of criminal activity was extensive. T.C.A. § 40-35-115(b)(1), (2). The Defendant argues that the trial court "found only two" of the statutory criteria and that the other "factors" outweighed these two. However, the statute does not present a list of factors to be weighed but is written in the disjunctive and gives the trial court the discretionary authority to impose consecutive sentences if it finds by a preponderance of the evidence that any *one* of the factors applies. *See* T.C.A. § 40-35-115(b)(6) (using the conjunction "or"); *Pollard*, 432 S.W.3d at 862 ("Any one of these grounds is a sufficient basis for the imposition of consecutive sentences."). The Defendant's brief contains a statement that the trial court's "finding was in error," but the record supports the conclusion that the Defendant, who had eight prior felony convictions in addition to numerous misdemeanor convictions for drug offenses, alcohol offenses, driving offenses, and misdemeanor thefts, had an extensive record of criminal activity. Accordingly, we cannot conclude that the trial court abused its discretion in imposing consecutive sentences.

## CONCLUSION

Based on the foregoing reasoning, the judgments of the trial court are affirmed.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE